Kurtz *v*. Pittsburgh et al.

Argued November 30, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*W. Denning Stewart,* with him *Stewart & Lewis,* and *William J. Kenney,* for plaintiff.

*Anne X. Alpern,* City Solicitor, for defendant, City of Pittsburgh.

*Charles F. C. Arensberg,* of *Patterson, Crawford, Arensberg & Dunn,* for intervening defendant.

*William M. Rutter,* Deputy Attorney General, with him *Claude T. Reno,* Attorney General, for Commonwealth, intervening defendant.

OPINION BY MR. CHIEF JUSTICE MAXEY, March 22, 1943:

In this case [1] the constitutionality of the Act of June 7, 1917, P. L. 600, as amended by the Acts of June 25, 1941, P. L. 207, and of April 21, 1942, P. L. 50, and May 6, 1942, P. L. 101, is challenged. This act provides that the dependent wives and children of regular employees of the state and political subdivision when such employees shall enter the armed forces of the United States shall be paid during the absence of such employees in such service, one half the employee's salary, such payment not to exceed $2000 per year and that the dependent parents of such employees so serving in the armed forces shall be paid annually such sums as the employees had been accustomed to pay such parents. In no case shall the one half of the employee's salary, when added to the remuneration paid him by the United States exceed the salary or wages paid the employee when he entered the military service. [2] These payments to dependents are attacked by the plaintiff taxpayer as an unconstitutional "giving of gratuities

---

[1] The intervening defendants are (1) the Commonwealth and (2) Irene Bigley. She is the wife of R. S. Bigley, who was employed as a city fireman until he entered the U. S. Army on July 25, 1942. They have two minor children. On September 21, 1942, the City Council of Pittsburgh approved the payment of $101.04 to Mrs. Bigley (this being one half her husband's salary as a fireman), and she has been receiving this amount subject to deductions by the Federal Government under the Servicemen's Dependancy Allowance Act of 1942.

[2] This act also provides that each employee so serving the nation shall be given leave of absence during the war's duration and for six months thereafter with the right of reinstatement after his return and that a substituted employee may be appointed to perform the duties of such an employee during his absence on military service. This part of the Act is not challenged.

to dependents of a chosen class composed of the employees" of the State and its subdivisions, who are in the nation's armed forces, and *not* to the dependents of other Pennsylvania citizens in the same service, and therefore as being in plain contravention of Article 3, sec. 7, of the State Constitution which declares that "the General Assembly shall not pass any local or special law, granting to any . . . individual any special or exclusive privilege or immunity . . ."

The bill sets forth, inter alia, "Other taxpayers of the City of Pittsburgh who are serving in the armed forces, or whose sons and husbands are so serving, are receiving no dependency payments other than the allotments provided for in the Soldiers' and Sailors' Federal Allotment Act of 1942, but are required nevertheless, as taxpayers, to pay additional dependency claims to the dependents of former employees of the Commonwealth and counties, municipalities, townships and school districts.[3]

The amount of the allowance to dependent kin, including parents, is based not on the *needs* of these beneficiaries but on the civil salary of the employee before entering war service. If, for example, a soldier was a night watchman of the City of Pittsburgh and received a salary of $1,800 a year, his dependent wife and children would under this act receive $900 a year. If a soldier was a civil engineer of the City of Pittsburgh and received $4,000 a year, his dependent wife would receive under this Act $2,000 a year (provided this sum did not exceed the difference between the sums paid by the United States to the employee and his salary as a public employee). A dependent wife, child or parent is, under our decisions, one who is either *partially or exclusively* supported by the wage earner. See *Morris v. Yough Coal & Supply Co.,* 266 Pa. 216, 109 A. 914; and *Evans v. Pittsburgh Coal*

[3] The legislation is further attacked as a denial of the equal protection of the laws and a taking of property without due process of law and as violative of the following provisions of the State Constitution: Art. 3, sec. 11; Art. 9, sec. 7, and art. 12, sec. 2.

*Co.*, 105 Pa. Superior Ct. 558, 161 A. 452. Under this act as amended a dependent wife of a state or city employee who while in civil life received $1,500 a year would be paid about $37\frac{1}{2}$ per cent as much as a dependent wife of an official who received an annual salary of $4,000.

Other anomalous provisions of this legislation are these: (1) No distinction is made between an employee who served the state or political sub-division for only a brief period, and an employee who had served many years as such an employee.[4] (2) As men who have dependents and also own real estate are inducted into war service, the municipal sub-divisions will be confronted with a situation where they cannot collect taxes on such real estate because of the Federal Soldiers' and Sailors' Relief Act of 1940, 6888, Section 501, as amended, 50 U. S. C. A. sec. 560, yet these sub-divisions are expected to assume the heavy financial burdens imposed upon them by this legislation. Counsel for the City of Pittsburgh stated that this legislation has already imposed on the City a burden of $100,000 a year and as the war continues, this burden "will be of staggering proportions". These anomalous provisions do not in themselves prove that the challenged act is unconstitutional but

---

[4] The act applies only to those "regularly employed". The "regular" employee might have worked for only a week or a month, while the substitute might have worked for a year, before being called into service. The former's dependents would be paid; the latter's would not, unless he could successfully maintain that a substitute who had worked "regularly" for a continuous period was entitled to have the benefits of the act conferred upon *his* dependents. Such a claim would have much merit, for even a "substitute" may possibly by continuity of service acquire the status of a "regular" employee. *Continuity of employment* is the essence of regularity, while "irregular" employment means only *occasional* or *intermittent* employment. If it should be determined that under this Act the dependents of a "substitute" employee who was called into service were *not* entitled to the benefits of the Act, the Act would *to that further extent* be discriminatory; if it should be determined that they *were* so entitled, we would have *pyramided* payments to the dependents of successive holders of *one* job.

they tend to show that the classification instead of being based on "necessity" (*Ayers Appeal*, supra) or as being based "on genuine substantial distinctions of the subjects classified" (*Com. v. Grossman*, 248 Pa. 11, 93 A. 781) is arbitrary and unjust.

While courts do not sit in judgment on legislative *wisdom* but only on legislative *power*, it is their duty to declare an act void which they adjudge to be beyond the legislature's authority. Fidelity to the fundamental law is the only guarantee of the permanence of constitutional government. 11 American Jurisprudence sections 88 and 89 says: "Since the Constitution is intended for the observance of the judiciary as well as the other departments of government and the judges sworn to support its provisions, the courts are not at liberty to overlook or disregard its commands. . . . This duty of the courts to maintain the Constitution as the fundamental law of the state is imperative and unceasing . . ." See also *Marbury v. Madison*, 1 Cranch (U. S.) 137, 2 L. Ed. 60. Chief Justice GIBSON in *De Chastellux v. Fairchild*, 15 Pa. 18, declared: "It is idle to say the authority of each branch [of the government] is defined and limited in the constitution, if there be not an independent power able and willing to enforce the limitations. Experience proves that it is thoughtlessly but habitually violated, and the sacrifice of individual right is too remotely connected with the objects and contests of the masses to attract their attention." Justice BRADLEY in *Boyd v. U. S.*, 116 U. S. 616, 635, said: "Illegitimate and unconstitutional practices get their first footing . . . by silent approaches and slight deviations from legal modes of procedure . . . It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be obsta principiis" [resist the beginnings].

Class legislation has frequently been declared void by this Court, and what *is* class legislation has been defined and illustrated in a long line of decisions. In *Penna. Co.*

*for Insurances on Lives and Granting Annuities et al., Appellants, v. Scott, Prothonotary, et al.,* 329 Pa. 534, 198 A. 115, this Court in an opinion by Mr. Justice LINN quoted what was said in *Laplacca et ux. v. Phila. Rapid Transit Co.,* 265 Pa. 304, 108 A.. 612, as follows: "The basis for classification must be reasonable and proper and founded upon a real, and not merely artificial, distinction between the members of the class and the general public, and based upon 'a necessity springing from manifest peculiarities, clearly distinguishing those of one class from each of the other classes, and imperatively demanding legislation for each class, separately, that would be useless and detrimental to the others' ". Many examples of legislation that was declared void because it was class legislation were cited and referring to one of these examples the opinion said: "In *Wood v. Philadelphia,* 46 Pa. Sup. Ct. 573, the Civil Service Act of 1906, P. L. 83, was declared invalid because it provided that it should not apply to any soldier, sailor or marine honorably discharged from service in any war for the United States Government nor to their widows or children".

In *Ayars' Appeal,* 122 Pa. 266, 16 A. 356, Justice STERRETT said: "The underlying principle of all the cases is that classification . . . is essentially unconstitutional, unless a necessity therefor exists. . . ." This principle was applied in *Commonwealth ex rel. Brown v. Gumbert et al.,* 256 Pa. 531, 100 A. 990. Although the legislation under attack there was "humanitarian", we said that a "positive constitutional requirement" cannot be disregarded because of an act's "beneficent aim".

In *Com. v. Casey,* 231 Pa. 170, 80 A. 78, this Court declared unconstitutional as class legislation the Act of July 26, 1897, P. L. 418, which regulated the hours of workmen in the employ of the state or municipal corporations. We said there: "It is impossible to suggest a difference between municipal corporations and private corporations that would make a regulation as to number

of hours to be employed in a day suitable for one class unsuitable for the other. . . . The classification here attempted is not with a view to meet the wants of municipal corporations as distinguishable from other corporations, but to ameliorate labor conditions, and it rests on neither distinction nor difference. . . . As well attempt to classify for labor regulations corporations according to their capital stock, and impose the regulations upon those only whose capitalization brings them within the designated class . . ." In *Com. v. Clark,* 14 Pa. Superior Ct. 435, an Act which prohibited the discharge of employees of corporations because of membership in lawful labor organizations was held void as class legislation. There President Judge RICE said: "It [the Act] extends protection to the employees of corporations . . . while denying the same protection to the employees of individuals, firms and limited partnerships . . . arbitrary selection can never be justified by calling it classification . . . Surely no one would contend that such arbitrary selection of persons for the purposes of legislation upon a subject with respect to which these persons differ in no particular from other persons would be justified upon the principle that if a law deals alike with all of a certain class it is a general law. . . . The test to be applied to classification is the genuineness and substantial nature of the distinctions."

In *Laplacca v. Phila. R. T. Co.,* 68 Pa. Superior Ct. 208, an Act which singled out attorneys as entitled to special rights as creditors was declared void as "involving an artificial and arbitrary classification". In *Scowden's Appeal,* 96 Pa. 422, this Court through Mr. Justice PAXSON condemned as unconstitutional an act based on an arbitrary classification and said: "It is special legislation under the attempted disguise of a general law. Of all forms of special legislation [5] this is the most vicious."

---

[5] See 12 Am. Jurisprudence, sec. 482, p. 156; *Cobb v. Bord,* 42 N. W. 396 (40 Minn. 479) : *State v. Hammer,* 42 N. J. L. 435. In *State v. Garbroski,* 111 Iowa 496, 82 N. W. 959, an Act exempting veterans

That the legislation now before us utterly fails to meet the constitutional test of reasonable classification "imperatively demanded . . . by the manifest peculiarities" of the respective classes (*Laplacca v. Phila. R. T. Co.*, supra) is made plain by a realistic consideration of it. For example, A & B are citizens who were inducted into the national war service. Each had received a salary of $4,000 a year; one from the state, the other from private industry. Each owns a property on which he pays taxes. Each has a wife and children. Each is rendering his country identical war service. This act singles A's dependents out for the special privilege of receiving $2,000 a year from the state treasury, while it says in effect to B's dependents: "Since the head of your family was employed on a farm (or in a coal mine or in a department store or on a railroad, as the case may be) you will receive no gratuity from the state treasury." [6] There is no pretence in this legislation that a public employee's dependents are being rewarded for any *special* service he rendered the state or for any "sacrifice" he made in accepting a public job. The acceptance of a public job is not generally regarded as a personal sacrifice.

---

of the Civil War from the payment of a license fee for peddling was declared unconstitutional. The Court said "it savors more of philanthrophy (worthy of the highest commendation, in its proper sphere), than of reasonable discrimination . . .": Quoting Cooley on Constitutional Limitations, 6th ed. sec. 482. In Penna. *disabled* veterans may procure peddlers licenses free of charge. The physical disability of the veteran is the "reasonable basis" for this classification. See Act of April 8, 1867, P. L. 50, Sec. 1, as amended. 60 PS 61 and 1942 Annual Pocket Part, sec. 61 and 62.

[6] Of the 50,000 residents of Pittsburgh now in the nation's armed forces, 414 are employees of the city and the dependents of 287 of them have thus far filed claims under this act. Predicated on valid dependent claims thus far filed in that city the annual cost to the city taxpayers will be $110,000. As of November 16, 1942, the dependents of 873 employees of the *state* were receiving annually under this act, $549,768. These sums would be greatly augmented if the act remained in force. This state has 28,117 salaried employees, and about 750,000 of its citizens in the nation's war service.

The Commonwealth chiefly relies on the case of *Speer v. School Directors of Blairsville,* 50 Pa. 150. The question in that case was the constitutionality of the Act of March 25, 1864, P. L. 85, providing for the payment of bounties to volunteers for service in the Union armies in the Civil War. The Borough of Blairsville attempted to borrow by issuing bonds, $5000 to procure volunteer enlistments by paying to each volunteer a bounty of $300 to fill the quota assigned to that borough by the requisition of the President of the United States. This Court said: "The question is narrowed to a single point: Is the purpose, in this instance, a public one?" The Court held that it was. "It [the bounty] benefits the public by inducing and enabling those to go who feel they can best be spared. . . . The community is subject to the draft and it [the bounty] is paid to relieve it from a burden of war. It is not a mere gift or reward, but a consideration for service. . . . It is a contribution from the public treasury for a general good . . ."

The distinction between that case and this [7] is so obvious as to make extended discussion of it unnecessary. For the municipality to pay public money to *all* volunteers who protected that community, and the state and nation of which it was a part, was, of course, a proper

---

[7] This Act is also equally distinguishable from those Acts passed after our nation's wars, providing for pensions, bounties and veteran's compensation for *all* soldiers, (and the dependents of all soldiers) who as Pennsylvanians fought or died in service in those wars. A list of these Acts and their provisions can be found in 2 Smith & Reed's Laws, and in 51 PS, p. 275, Chapter 8. Some of these Acts were passed under a constitution which contained no prohibition against class legislation, but even these Acts had a reasonable basis for their classifications. Under the Act of May 15, 1861, P. L. 749, *all* widows and *all* children under 14 years of age, of veterans of the Civil War, were given $8 a month. The Act of April 1, 1909, P. L. 95, 51 PS 381, authorized the payment of a pension not exceeding $25 per month, to either the widow or minor children or dependent parent of *any* soldier of the National Guard or Naval Force of Pennsylvania who was *killed* or *fatally injured* "in line of duty while in action, serving under order of the Governor". The Act of May 16, 1923, P. L. 236, allows

use of public funds for a public purpose. It was no more "class legislation" than is a law authorizing the payment of public money to policemen and firemen. If it paid bounties only to those volunteers who were in the public employment at the time of volunteering we would have a parallel to the present case, except that in the constitution then in force (1864) there was no prohibition against class legislation.

Article 3, section 18, of the constitution permits appropriations for pensions or gratuities for military services, but when such appropriations are made, they cannot arbitrarily be made to favored individuals. If, for example, the legislature should grant pensions or gratuities for military services to those who in this war serve in the nation's armed forces in the Pacific-Asia area of combat operations and deny such pensions or gratuities to those who serve in the nation's armed forces in the Atlantic-Europe-Africa area of combat operations, no court would hesitate to pronounce such a classification unreasonable and unconstitutional.

No case can be found in Pennsylvania where a classification of persons to receive benefits from the public treasury based on the *identity* of the employers of such persons, or based on anything like that, has ever been upheld as constitutional. It is a classification purely arbitrary and without reason and is a perfect example of the evil practice of permitting payment of public funds for the benefit of one class of people without any special corresponding benefit being derived by the public from that class of people. It is paternalism [8] "run riot" and if this

compensation to *all* war veterans at the rate of $10 a month for every month served in any war in which the U. S. was a participant, up to $200 a month. The Act of April 12, 1883, P. L. 8, sec. 1, 51 PS 339, authorizes the payment to *all* soldiers and to *all* widows of soldiers of the war of 1812, a gratuity of $40 and an annuity of $120.

[8] All history proves that exactly to the extent a government becomes paternalistic, every citizen's right to the fruits of his toil becomes insecure. As a government increases its power to do things *for*

Act is not declared void as special legislation there can be no logical limit to the legislature's power to confer gratuities on the kinsmen of public employees or on the employees themselves. The dependents of state and city and school district employees in the national war service have no claim for gratuities from the public treasury which cannot be made with equal merit by the dependents of the employees of private industry or by farmers or professional men who are in the national war service.

The legislation now under review is a perfect example of the kind of legislation which Article 3, sec. 7, of the Constitution of 1874 was ordained to prevent. In *Commonwealth v. Gilligan,* 195 Pa. 504, 46 A. 124, this Court speaking through Justice MITCHELL said: "The evil at which the prohibitions of Article 3 was directed was . . . the granting of special privileges or exemptions to individuals or favored localities." In *Ayars' Appeal,* supra, Justice STERRETT speaking for this Court depicts the "class legislation" on the statute books prior to the present Constitution as a "pernicious system so general and deeprooted and the evils resulting therefrom so alarming that the people of the commonwealth determined to apply the only remedy that promised any hope of relief." He declared that it was "doubtless, a proper appreciation of the magnitude of these evils, as much as anything else, that called into existence the convention that framed the present constitution and induced its adoption by an overwhelming vote."

The State Employes Retirement System and the Teachers' Tenure Act are cited in the Commonwealth's brief as examples of constitutional laws providing for gratuities and pensions. These Acts bear no legal resemblance to the instant Act. The payments made to state employees and to teachers are made out of funds to which the beneficiaries have made large contributions

---

people it *must* increase its power to do things *to* people. Every new largesse bestowed by a government on favored individuals means just so much more substance taken from the fruits of other individuals' labor.

and are commensurate with the length of service of the recipients, and they are not gratuities made to the dependents of *some* employees. In *Retirement Board of Allegheny County v. McGovern et al., Commissioners, Appellants,* 316 Pa. 161, 174 A. 400, the Court reiterated (p. 168) what was said in *Busser v. Snyder,* 282 Pa. 440, 454 "That the basis of the retirement pay is neither charitable nor benevolent but is for the faithful, valuable service actually rendered over a long period of years." We also said (p. 169) that "a pension is a bounty or a gratuity given for services that were rendered in the past" and that "retirement pay is defined as 'adjusted compensation' presently earned, which, with contributions from employees is payable in the future . . . When the conditions are satisfied . . . retirement pay becomes a vested right." Under the legislation now before us, length of service of the employee has no bearing whatever on the amount his beneficiaries receive. The dependents of an employee who was engaged in public service for only one month or one day at a salary of (say) four or five thousand dollars a year will receive more than the dependents of an employee who worked twenty years at a salary of $2000 a year. This is simply a case of making an arbitrary selection of beneficiaries of public funds and calling that selection "reasonable classification". It is immaterial whether this classification was made by the legislature in good faith or not, since there was no necessity for it. To adjudge an Act unconstitutional is *not* to impugn "the good faith" of the legislature which passed it.

The Workmen's Compensation Act does not sustain by analogy the Act now under review. That act is expressly authorized by Art 3, Sec. 21, of the Constitution. Any law passed pursuant to that authority must be "reasonable".

In *Rich Hill Coal Co. et al. v. Bashore,* 334 Pa. 449, 7 A. 2d 302, we declared sec. 201.1, sub-section B of the Workmen's Compensation Act of 1938 invalid as "special

legislation" and a denial of the equal protection of the laws. We also condemned section 502 of the Act of June 4, 1937, P. L. 1552 as unconstitutional in that it would take money from one individual and give it to another. We said (p. 498) : "Where classification is set up it must be reasonable and it must be necessary. All these requirements are violated."

The fact that the Workmen's Compensation Law excepts from its provisions agricultural services and domestic services performed in a private home for another for a valuable consideration has never given rise to any challenge of that part of the Act as unconstitutional, for that classification is obviously reasonable. The Court in *Carville, Appellant, v. A. F. Bornot & Co.,* 288 Pa. 104, 112, 135 A. 652, declared: "The Workmen's Compensation Act shows throughout that it was passed for the benefit of the great army of business and industrial wage earners. . . ."[9]

This legislation cannot be constitutionally justified (as suggested) as encouragement by the state of its employees to enlist before they are drafted. If the public welfare requires such encouragement to engage in war it should be applied to *all* residents of the Commonwealth who are qualified for military service and not merely to a select minority.

It has been suggested that the power to do what the state attempted to do here is an incident to the relation of employer and employee. What a private employer can do with *his own funds*[10] in granting gratuities to his

[9] The Supreme Court of Montana said in *Lewis & Clark County v. Industrial Accident Board,* 155 P. 268: "It cannot be contended that a classification of workmen based upon the risks of their employment is either arbitrary or unreasonable."

[10] The fact that the Business Corporation Law of May 5, 1933, P. L. 364, Article 3, Sec. 315, 15 P.S. Sec. 2852-315 declares that business corporations "may continue the salaries of such of its employees as may have enlisted or enrolled, or may hereafter enlist or enroll in . . . the military or naval service of the United States" has, of

employees or the latter's dependents, furnishes no guide as to what *the state* as an employer can do in using public funds as gifts to its employees and their dependents. In the disbursing of public funds the organic law is the sovereign guide, and that guide protects the public funds as much against gifts to public employees as it does against gifts to any other citizens. There must be a reasonable relationship between the compensation received by public employees and the public service they render. The gratuities given by this Act to the kindred of employees is certainly *not* compensation for the service these employees are rendering the *state* and its *political sub-divisions*. In *Com. v. Casey,* supra, Justice STEWART said: "If . . . municipalities with respect to matters not political and governmental but proprietary and private, are to be regarded as private corporations . . . then the inquiry must be whether the Act under consideration is a special or [a] general law."

It has also been suggested that what the state as an employer attempts to do here is analogous to its granting "sick leaves" with pay to its employees. The answer to that is that if such reasonable leaves are granted by the state or a municipality to *all* of its employees there is no ground for attacking the statute under which the grant is made as special legislation. As nearly every individual is subject to occasional illness, sick leaves become an inevitable incident to all employment. If the state as an employer chooses to grant such leave with pay, for limited periods (such laws are usually for ten days or two weeks annually) this action does not involve an unconstitutional misuse of public funds. When a person enters into the service of the state at a weekly or annual salary he contracts to give his employer all the service required

course, no bearing on the question before us. The Act cited simply clothes a corporation with *power* to continue the salaries of its employees in war service *if it sees fit to do so*. What a business corporation does with its own money, so long as it is expended for a lawful purpose, is of no concern to the taxpayers. What the State legislature does with public money is of immediate concern to the taxpayer.

of him during working days, subject only to occasional interruptions by the illnesses common to man. Vacations and sick leaves reasonable in length of time, without deduction of pay, are now generally recognized as implied in contracts of public employment. If vacation and sick leave with pay were unreasonably protracted in duration they would justify the charge that public funds were being illegally used in payment for services not performed. Such leaves would be particularly offensive to the constitution if they were granted to *special classes* of employees, with no reciprocal benefit to the state.

To argue that every public employee possessing war service qualifications may bring his dependents within the provisions of this act by entering the service, helps the proponents of this act not at all. In the first place, all public employees obviously do not possess war service qualifications. Secondly, if they did and if all of them abandoned the service of the state for national service, this act would still be unconstitutional. In *Com. v. Quaker City Cab Co.*, 287 Pa. 161, 134 A. 404, this court held constitutional a statute which laid a tax on the gross receipts from the operation of taxicabs of foreign and domestic corporations, but did not tax like receipts from individuals and partnerships in the same business. *This* Court held that "it is sufficient if all corporations of like character fall within the statute". Upon appeal to the United States Supreme Court the judgment of this court was reversed and the reasoning just quoted was rejected, the court saying that the classification had only "an arbitrary basis" and was not justified for it was not "based on a real and substantial difference having reasonable relation to the subject of the legislation". In a footnote the United States Supreme Court referred in support of its decision to the case of *Schoyer v. Comet Oil & Refining Co.*, 284 Pa. 189, where we said: "There must be a real distinction between the objects with which the law deals for it to be valid" as a classification.

In *Com. ex rel. Graham et al. v. Schmid,* 333 Pa. 568, 3 A.2d 701, where we upheld sec. 4407 of the Third Class City Law of June 23, 1931, P. L. 932, which permits a preference of war veterans on the eligible list of civil service appointments, we said: "There must be some reasonable relation between the basis of preference and the object to be obtained . . . where war service is appraised, in the allotment of public positions, beyond its value, and the preference goes beyond the scope of the actual advantages gained in such service, the classification becomes void and the privilege is held unreasonable and arbitrary." We declared unconstitutional the provisions of sec. 4405 of the Third Class City Law, supra, "giving fifteen *percent* credit in advance to veterans", and said: "It gives undue weight to the military and public experience of the veterans and in that way constitutes a special and exclusive privilege. . . ." To hold that a war veteran may after qualifying in a civil service examination for a position be given a little extra credit rating "in recognition of the discipline, experience and service represented by their military activity" (as we did in the *Schmid* case) does not warrant a holding that the dependents of a soldier, sailor or marine who was formerly in state public service may constitutionally be granted a gratuity from Pennsylvania state and municipal funds for no reason except that he had been formerly on the pay-roll of that state or municipality while the dependents of *all other* Pennsylvania soldiers, sailors and marines shall receive nothing from the same source.

In *Carney et al. v. Lowe et al.,* 336 Pa. 289, 9 A. 2d. 418, we held unconstitutional the provision in sec. 4407 of the Third Class City Law, supra, that an appointment of war veterans may be made without regard to any age limit provided for by law or the rules and regulations of any board or commission. Justice STERN said: "To permit war veterans to be appointed even though above such maximum [of age] is not the mere granting to them of a preference if otherwise eligible but the

setting up for them of a standard of eligibility different from that established for other applicants. Therefore it is clear that the permitted waiver of the age limit provided by section 4407 is unconstitutional."

The decision in *Equitable Credit & Discount Co. v. Geier,* 342 Pa. 445, 21 A. 2d. 53, lends no support to the Act now before us. There the Court held that "there are well marked differences between consumers' and commercial loans in regard to the type of borrower, the nature of the security and the terms upon which the credit is given. . . . If the law did not provide for higher charges on consumers' loans than on the larger commercial loans, that type of credit probably could not exist. . . ." This was in substance a finding that the classifications made in the Act there being reviewed were necessary. In the case of *Equitable Loan Society Inc. et al. v. Bell, Secy.,* 339 Pa. 449, the Court held that legislation which applied exclusively to pawnbrokers "in view of the conditions and temptations . . . in that business" was *not* an unreasonable classification. The case of *Burkley v. Phila. et al.,* 339 Pa. 426, 15 A. 2d. 201, gives no support to this law for in that case we held that the Act challenged "applied to all taxables within a state" and had no "special application to any class." *Harr, Secy., v. Boucher et al.,* 142 Pa. Superior Ct. 114, 127, 15 A. 699, reiterates the principle that legislative classification must be "founded on real distinctions in the subjects classified." The case of *Com. v. Grossman,* 248 Pa. 11, 93 A. 781, holds that legislative classification will be sustained "if made in good faith *and based on genuine and substantial distinctions of the subjects classified*" (italics supplied). To classify, for the purpose of bestowing gratuities, Pennsylvania citizens in the nation's war service into two classes; one composed of *public* employees and the other composed of farmers and employees of private industry and professional men, etc., is to present to the courts a basis for classification so spurious and unsubstantial that it is their clear duty to reject it as unconstitutional.

In holding this legislation unconstitutional we are not taking a position inconsistent with the position this Court took in *Com. ex rel. Schnader v. Liveright et al.,* 308 Pa. 35, 161 A. 697. It is always the duty of the state acting through appropriate agencies to take care of persons who are without means of support. But even this cannot be done arbitrarily. The dependents of *public employees* are entitled to no more from the public treasury than the dependents of those employed in private industry or those employed as farmers, teachers or professional men. As Justice STEWART aptly said in *Com. v. Casey,* supra; "This attempt at classification, if so intended, must fail. . . . In the matter of legislative classification, regard is always to be had to the subject to which it relates. . . . The classification here attempted . . . rests on neither distinction nor difference. . . ."

The state and its political sub-divisions have no funds at their disposal except funds exacted as taxes directly and indirectly from every self-supporting person in the Commonwealth. The protection of private property against unwarranted taxation by keeping public expenditures within constitutional limits is one of the most important duties of the judiciary. To exactly the extent public officials can impose by statute or by contract pecuniary burdens on the state or its political sub-divisions they can despoil the citizens of their possessions under the guise of taxation.

It is asserted by counsel for the intervener, Irene Bigley, that the legislature is "the sole judge as to laws that are in the interest of the public." The *constitution* has declared that "a special law" granting to any individual "any special or exclusive privilege" (as this law does) is interdicted as contrary to the public interest. The same counsel characterizes as "startling, the doctrine that the Commonwealth is powerless in this time of war to make laws governing its employees and the employees of the political and municipal divisions of the

Commonwealth because the same benefits are not extended to every employee throughout the Commonwealth." What was said about the United States Constitution by the United States Supreme Court in the historic case of *Ex Parte Milligan*, 4 Wall. 2, applies with equal appositeness to the constitution of this Commonwealth: "The Constitution . . . is a law for rulers and people, equally in war and in peace. . . . No doctrine involving more pernicious consequences was ever invented by the wit of man than that any of its provisions can be suspended during any of the great exigencies of government." If the legislature can grant gratuities to the dependents of public employees in time of war, while denying them to the dependents of other citizens, it can do the same thing in time of peace.

This statute has no bearing on public employment and no bearing on national defense except as it uses the narrow base of *public employees engaged in national defense* as a classification authorizing the payments to the dependents of *such* employees of gratuities from the public treasury, while the dependents of *all other* employees and the dependents of *all other Pennsylvania citizens, engaged in the national defense* receive nothing from the public treasury.

This act is clearly not a gratuity for military service, within the meaning of Article III, section 18, for if it was such a gratuity it would apply to *all* who rendered military service and not merely to that limited class of persons who before they entered military service had the good fortune to be on the public payroll.

The people of Pennsylvania never authorized the creation by the legislature of a class of persons to receive gratuities from the public treasury and consisting *only* of those soldiers, sailors and marines who before becoming such were public employees. To authorize "pensions or gratuities for military services" to *all* who render such services is one thing; to interpret such a provision as authorizing gratuities to that small percentage of

persons now in war service but who *were* public employees is so obviously a different thing that it should require no argument to point it out. The legislature has no more warrant under the constitution of this Commonwealth to grant pensions and gratuities *only* to its former employees now in the national service than it would have to grant pensions and gratuities only to college graduates or former carpenters now in the national service. In practical effect this legislation creates a special and favored class consisting of the dependents of fewer than two * percent of those 750,000 Pennsylvanians now in the nation's war service.

The power to impose obligations on the taxpayers implies the power to tax them to discharge those obligations, and as Justice MILLER of the United States Supreme Court well said in *Loan Association v. Topeka,* 20 Wall. 655, 663: "The power to tax is the strongest, the most pervading of all the powers of government, reaching directly or indirectly to all classes of the people. It was said by Chief Justice MARSHALL, in the case of *McCulloch v. The State of Maryland* [4 Wheaton 315, 431], that the power to tax is the power to destroy. . . . This power can as readily be employed against one class of individuals and in favor of another, so as to ruin the one class and give unlimited wealth and prosperity to the other, if there is no implied limitation of the uses for which the power may be exercised. To lay, with one hand, the power of the government on the property of the citizen, and with the other bestow it upon favored individuals . . . is none the less a robbery because it is done under the forms of law and is called taxation. . . ."

The decision in *Henn v. City of Mt. Vernon,* 189 N. Y. S. 851, has been cited in support of the constitutionality of this act. There it was held that a New York statute enacted in 1917 and providing that a city should

---

* See table and note at end of opinion.

pay its officers and employees while engaged in military service the difference between their salary and the compensation paid to them while in service did not deny to others in that service the equal protection of the law guaranteed by article 14, section 1 of the Constitution of the United States.[11]

As to the holding of the New York Court that the act in question did not offend the equal protection of the laws clause of the Federal Constitution this is to be said: (1) It was not a decision by the highest court of the state and even if it was, its strength as a precedent is based on the cogency of its reasoning, and its reasoning is not cogent. It classes the act with "the various statutes giving to veterans preferences in public employment which have been so uniformly regarded as constitutional. . . ." Our review of *Com. ex rel. Graham v. Schmid*, supra, clearly shows the distinction between those cases where veterans who qualify in civil service examinations for public jobs are given some advanced rating because of their previous military discipline and training and the case now before us where "dependents" are given "out and out" gratuities because the man they "depend" on had a public job before entering war service.

A decision of the highest court of New York in the following case is far more apposite in principle to the question now before us than the just referred to decision of a lower appellate New York court. In *Bush v. Board of Supervisors*, 159 N. Y. 212, 53 N. E. 1121, the New York Court of Appeals declared unconstitutional a law of New York empowering county supervisors to raise funds by taxation to refund the money expended in furnishing substitutes or in commutation of men who were drafted into the military service of the United

---

[11] The constitution of the state of New York contains no provision like the one in our constitution (article 3, section 7) which prohibits the granting to any individual any special or exclusive privilege or immunity.

States. The Court in a per curiam opinion said: "The legislature cannot authorize taxation for the purpose of making gifts or paying gratuities to private individuals. . . . Those who actually served under the conscription only discharged their obligations to the general government. . . . The fact that a majority of the taxpayers requested the supervisors to levy the tax is of no importance. Majorities, however potent in many respects, have no power to impose taxes upon the minority for the purpose of raising money to be devoted to gifts or gratuities to individuals. We think that, under the general principles which control the exercise of the power of taxation, the legislature had no power to pass the act in question. It did not attempt to authorize taxation for any public purpose, but was, in effect, a method of taking private property, not for any public use, but for the benefit of private individuals. Legislation of this character has often been questioned in the courts, and quite uniformly condemned. . . ."

In *Colgate v. Harvey,* 296 U. S. 404, 423, the United States Supreme Court laid down this clear test: "The classification, in order to avoid the constitutional prohibition [against a denial of the equal protection of the laws] must be founded upon pertinent and real differences, as distinguished from irrelevant and artificial ones. The test to be applied in such cases as the present one is—does the statute arbitrarily and without genuine reason impose a burden upon one group of taxpayers from which it exempts another group, both of them occupying substantially the same relation toward the subject matter of the legislation? *'Mere* difference is not enough . . .' *Louisville Gas Co. v. Coleman,* 277 U. S. 32, 37; *Frost v. Corporation Commission,* 278 U. S. 515, 522."

In the act before us the classification is not founded upon pertinent and real differences but upon irrelevant and artificial ones. The class favored is neither the dependents of all who enter the nation's armed forces nor

of all public employees. It is a narrow and restricted group of the dependents of these who were public employees and are now in the armed forces. The legislature cannot "get around" the constitutional limitation invoked here by arbitrarily creating a class and then bestowing gratuities on the dependents of the comparatively few * (out of the hundreds of thousands in the armed forces and out of the tens of thousands of public employees) who bring themselves within that favored class.

The legislation challenged is class legislation, contrary to the clause of Article 3, section 7 of the Constitution, hereinbefore quoted, because it "lays with one hand the power of the government on the property of the citizens" *in general* and "with the other bestows it" upon those *"favored individuals"* who for a period had been enjoying the status of public servants before they, with hundreds of thousands of other Pennsylvanians in private pursuits, were called to war.

We agree with what was said in *Com. ex rel. Graham v. Schmid,* supra, that "the fact that veterans . . . have been to wars . . . should be given some consideration", and this state has always been generous in its recognition of the military and naval services of its sons, but there has never been another act on the statute books by which this Commonwealth has attempted to favor by gifts of public funds to the dependents of its own employees in war service over the dependents of those other Pennsylvania citizens who were rendering precisely the same kind of war service but who before doing so were employed on farms or in mines and factories or elsewhere in private industry. It is precisely that kind of *arbitrary* classification which the constitutional provision here invoked was ordained to prevent and we conceive it as a performance of our judicial duty to "support, obey and defend" the constitution when we declare,

---

* See table and note at end of opinion.

as we now do, this challenged law to be unconstitutional and void.

It is not necessary to discuss the other constitutional objections earlier referred to.

The Act of June 7, 1917, P. L. 600, as amended by the Act of June 25, 1941, P. L. 207 and by the Act of April 21, 1942, P. L. 50 and the Act of May 6, 1942, P. L. 106 so far as this original act and these later amendatory acts provide for the payment to dependent wives and children of public employees in the armed services of the United States, of one half of the salary of such employees, not to exceed $2000 per year, and the payments to parents of such sums as the employees had heretofore been accustomed to contribute to their dependent parents, are adjudged to be unconstitutional and void, and the City of Pittsburgh and each and all of its officers are enjoined from expending or causing to be expended any public funds under the provisions of these just cited acts and amendatory acts.

The costs to be paid by the City of Pittsburgh.

Mr. Justice LINN and Mr. Justice HORACE STERN dissent.

The term of Chief Justice WILLIAM I. SCHAFFER ended and he retired from the Court on January 3, 1943, which was before this draft of the Court's opinion was written and before a final decision was reached.

| 12 Employer | Number of Employees | Regular Employees in the Armed Forces |
|---|---|---|
| Phila. City and County......19,740 | | 667 |
| Phila. School District........10,000 | | 289 |
| Pittsburgh ................ 5,100 | | 427 |
| Pittsburgh, School Dist. ..... 4,200 | | 85 |
| Scranton ................. 559 | | 20 |
| Scranton, School District .... 873 | | 30 |
| | 40,472 | 1,518 |
| State of Pennsylvania .......28,753 | | 2,151 |

Philadelphia, Pittsburgh and Scranton constitute 27% of the population of the State. They have 1,518 "regular" employees who are

DISSENTING OPINION BY MR. JUSTICE LINN:

Mr. Justice HORACE STERN and I dissent; the position of former Chief Justice SCHAFFER is stated in a note.[1]

Effect must be given to a statute unless it clearly appears beyond all doubt that the legislature had no power to pass it.[2] When a statute is challenged as prohibited special legislation, the court must remember that it is the duty of the legislature to make the classification; that the duty of the court is limited to considering whether the legislature could have had any reasonable ground for making it. The court must support the classification if it is one that the legislature, in good faith, could say there was some basis for.[3] "If the distinctions are genuine the courts cannot declare the classification void, though they may not consider it to be on a sound basis. The test is, not wisdom, but good

now in the nation's armed forces. If this average is maintained in other political sub-divisions, the total number of employees of all state political sub-divisions, in such service, would be 5,620. Adding this number to the number of state "regular" employees in the armed forces, 2,151, makes a total of 7,771 or less than 2% of the total number of Pennsylvanians in the nation's armed forces. Not *all* of these have dependents. (These figures are based on reports from qualified public officials and relate to dates near February 1, 1943.)

[1] Former Chief Justice SCHAFFER heard the argument of this appeal and prior to the expiration of his term of office joined in a dissenting opinion of which this is an amplification.

[2] *Busser v. Snyder*, 282 Pa. 440, 449, and cases cited p. 449, 128 A. 80; *Kelley v. Earle*, 325 Pa. 337, 345, 190 A. 140; *Chester County Institution Dist. v. Commonwealth*, 341 Pa. 49, 68, 69, 17 A. 2d 212; *Pennsylvania Railroad Co. v. Riblet*, 66 Pa. 164, 169; *Collins v. Lewis*, 276 Pa. 435, 438, 120 A. 389. As the plaintiff also relies on the equal protection clause of the federal constitution, *New York Rapid Transit Corp. v. City of New York*, 303 U. S. 573, 578, may also be cited.

[3] *National Transit Co. v. Boardman*, 328 Pa. 450, 197 A. 239; *Chester County Institution Dist. v. Commonwealth*, 341 Pa. 49, 17 A. 2d 212.

faith in the classification." [4] Judges may not say that the legislature should not have made the classification merely because if they had been members of the legislature, instead of judges, they would have voted against it.

The statute now in question is a regulation of public employment [5] in its relation to national defense. We examine it in the light of our legislative history of preference to the veteran and his dependents which culminated in the constitutional provision authorizing appropriations for "pensions or gratuities for military services." There was nothing new in the idea of preferring the soldier. Ever since the Act of March 12, 1783, 2 Sm. L. 62, our legislation has preferred soldiers and their dependents. An Act of March 27, 1790, 2 Sm. L. 517, provided relief for widows and children of soldiers; the Act of March 19, 1816, 6 Sm. L. 377, benefited widows and children of soldiers killed in the war of 1812; the Act of March 30, 1866, P. L. 89, section 1, 51 PS section 331, provided gratuities and annuities for veterans and widows of veterans of the same war; the Act of May 15, 1861, P. L. 749, section 16, 51 PS section 351, provided benefits for widows and children of soldiers killed in the service of the Union. The Act of March 25, 1864, P. L. 85, construed in *Speer v. School Directors of Blairsville,* 50 Pa. 150, provided for bounties for volunteers in the Civil War. An Act of May 16, 1923, P. L. 236, 51 PS section 421, provided world war veterans' compensation. The statutes passed prior to 1873 antedated the constitutional prohibition of special legislation now invoked, but that hundred and fifty years' legislative history furnishes the setting for the more recent action. It was a well known fact, when the present constitution was adopted, and, we may assume, that the members of the convention of 1873

---

[4] *Seabolt v. Commissioners of Northumberland County,* 187 Pa. 318, 323, 41 A. 22.

[5] That is, employment by the state or any of its civil subdivisions.

had this long recognized preference in mind when they provided in Article III, section 18, that "No appropriations, except for pensions or gratuities for military services, shall be made for charitable, educational or benevolent purposes. . . ." It has since been amended to read: "No appropriations shall be made for [certain classes] Provided, That appropriations may be made for pensions or gratuities for military services. . . ." [6] The challenged Act of 1917, as amended, rests on those provisions. It is significant that after the Act of 1917 had been administered during the first World War without challenge on the ground that it involved unlawful classification of the recipients of "pensions or gratuities," the people a few years ago, amended Article III, section 18, and expressly authorized appropriations "for pensions or gratuities for military services." Whether the provision for the soldier's dependents be called a pension or a gratuity is not important for present purposes. What is important, is that by their action, the people themselves created a separate class for the benefit of veterans. This court should therefore not say that the legislature, in adopting a classification made by the people themselves, made an unreasonable classification.

The legislature may legislate for public employes as a class; compare the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, 43 PS section 751, considered in *Commonwealth v. Perkins,* 342 Pa. 529, 21 A. 2d 45; see also *Com. ex rel. Graham v. Schmid,* 333 Pa. 568, 3 A. 2d 701; *Retirement Board of Allegheny Co. v. McGovern,* 316 Pa. 161, 174 A. 400; *Henn v. City of Mt. Vernon,* 198 App. Div. (N. Y.) 152; *Heim v. McCall,* 239 U. S. 175. In *Lewis & Clark County v.*

---

[6] In *Busser v. Snyder,* 282 Pa. 440, 449, 450, 128 A. 80, this court said, "Pensions or gratuities for military service are in the nature of compensation for a special and highly honored service to the State, implying the idea of a moral obligation on the part of the government . . ."

*Industrial Accident Board,* 52 Mont. 6, 12, 155 Pac. 268, in dealing with a claim made by a county employe for workmen's compensation, the court said: "We are unable to appreciate much of counsel's argument in support of the contention that this statute is open to the objection that it is obnoxious class legislation. In the absence of any restriction in the Constitution, the legislature was free to establish a measure of duty owing to a public employee different from that owing to a citizen who is not in the public service, and it cannot be contended that a classification of workmen based upon the risks of their employment is either arbitrary or unreasonable." Legislation establishing and regulating public employment is therefore not obnoxious merely because it is class legislation.

This court has decided that preference of the veteran does not render a statute invalid as class legislation; we sustained legislation classifying veterans in applications in civil service. In *Commonwealth ex rel. Graham v. Schmid,* 333 Pa. 568, 571, 3 A. 2d 701, we considered the subject from various angles and decided that a veteran who passed the examination may be preferred over non-veterans passing the same examination. In the opinion, former Chief Justice KEPHART said: "Preferences for war veterans in public employment have been widely enacted. This state has not been remiss in according this recognition, and the Third Class City Law is merely an instance of the many laws adopted. This Court has not passed on the validity of these acts, but other jurisdictions have considered similar statutes from a constitutional viewpoint. Generally speaking, the laws have been sustained, but only if they prescribe that the veteran possess the minimum qualifications necessary to the discharge of the public duties involved. . . . The theory on which the cases are decided is that, while it may be perfectly lawful to prefer veterans, there must be some reasonable relation between the basis of preference and the object to be obtained, the preference of

veterans for the proper performance of public duties."
On page 577, we said: "Our conclusions from these
decisions is that, so long as the statute requires passage
of the examination, a veteran may constitutionally be
preferred over non-veterans whether the statute be
mandatory or directory. In either case the minimum
qualification for appointment is success in an examina-
tion. Its passage satisfies the requirement that appoint-
ments of public employees be made only of persons
reasonably fitted for the position. There can be no ob-
jection to the provision of section 4407 which *permits*
a preference of any veteran on the eligible list." On page
572, a footnote refers to a number of acts passed by our
legislature in 1935, 1936 and 1937, giving preferences
to veterans seeking employment with specified state
agencies. All of these statutes are class legislation. We
also held, as the majority opinion states, that section
4405, giving 15% credit in advance to veterans was un-
constitutional.

The term "class legislation" adds nothing for or
against a statute; much of our legislation is, and neces-
sarily must be, class legislation. If a statute applies
to all the members of the class and it appears that the
legislature could reasonably say there was a sensible
basis for creating such a class, the court has no lawful
power to declare it invalid. Certainly, this Act of 1917,
as amended, is general in its application; it applies to
every public employe; any one of them possessing the
service qualifications may bring himself within its pro-
visions by entering the service, thereby entitling himself
to ask payment for his dependents. If the statute pro-
vided for payment of part of their salaries direct to the
employes while in the armed forces, no valid question
could arise as to its constitutionality any more than it
could as to payments when on sick leave. We are unable
to detect any constitutional difference between payments
to them direct and through them to their dependents
in the first instance. The latter method merely provides

administrative means by which the money immediately reaches the beneficiary and avoids the delay that would result if the money had to be sent to the soldier in some distant place and be returned by him to his dependent; it is paid in relief of the soldier's duty to support and is paid pursuant to the constitutional provision authorizing "pensions or gratuities for military services." On the authority of cases cited above, we reject the majority's conclusion that the Act is not of general application because confined only to public employes and not to the employes of other employers. That it need not apply to all employes, is illustrated by reference to some of a number of familiar statutes. For example, the Workmen's Compensation Law is a general law though many exceptions to its application are familiar. Such legislative discriminations do not make the Act any the less a general act in the sense in which the term is used in the law. It is still a general act, is class legislation and is also constitutional. It is constitutional because the circumstances are such that the court may not say the legislature could not have had reasonable ground for the classification. The same lawful discriminations are also illustrated in the class legislation regulating borrowing and lending money. A man desiring to borrow a hundred dollars may attempt to do so, for example, from any one of three different classes of lenders, each governed by different class legislation. (1) He may borrow from a bank or trust company when the transaction will be controlled by the general banking laws; (2) he may borrow from one doing business pursuant to the statute generally known as The Small Loans Act; this Act was challenged as prohibited special legislation, but we applied the rule that it did not appear that we could declare that the legislature was not justified in making the classification: *Equitable Credit and Discount Co. v. Geier*, 342 Pa. 445, 21 A. 2d 53; (3) the same loan transaction may be governed by the Act regulating pawnbrokers; this Act also was assailed as prohibited

class legislation, but again we decided there was no ground to permit the court's interference with the legislative classification: *Equitable Loan Society v. Bell,* 339 Pa. 449, 14 A. 2d 316. These Acts, though applying to special classes of our residents, were general Acts.[7] The majority opinion refers to these three instances of class legislation and concedes, as it must, that when the Small Loans Act and the Pawnbrokers' Act were challenged as unlawful classification, we held that this court could not substitute its judgment for that of the legislature in making the classifications. The same concession and for the same reason is made in the majority opinion with respect to the discrimination resulting from the provisions of the Workmen's Compensation Law entitling only some, but not all, workmen to its benefits.

When, in the light of these conceded rules and their frequent application by this court, we examine what is said in the opinion of the majority, as basis for impeaching the judgment of the legislature with respect to this Act of 1917, we find two classes of hypothetical illustrations given for the purpose of showing unlawful discrimination. If these illustrations should be regarded as showing possible inequality in the operation of the Act, that possibility is not sufficient to impeach the judgment of the legislature. To condemn the legislation, the plaintiff must go farther and show that the inequalities result from legislative caprice; but there is not the slightest basis for such suggestion. "The rule of equality permits many practical inequalities." *Rapid Transit Corp. v. New York,* 303 U. S. 573, 578. Among

---

[7] Other illustrations might be given, among them: *Harr v. Boucher,* 142 Pa. Superior Ct. 114, 15 A. 2d 699; *Commonwealth v. Grossman,* 248 Pa. 11, 93 A. 781, Licensing private banking; *Retirement Board of Allegheny Co. v. McGovern,* 316 Pa. 161, 174 A. 400; *Dornan v. Phila. Housing Authority,* 331 Pa. 209, 200 A. 834; *Commonwealth v. Girard Life Ins. Co.,* 305 Pa. 558, 158 A. 262; *Burkley v. Phila.,* 339 Pa. 426, 15 A. 2d 201; *Turco Paint and Varnish Co. v. Kalodner,* 320 Pa. 421, 184 A. 37. Statutes regulating occupations also suggest themselves.

the illustrations given by the majority are the hypothetical cases of the soldier, who had been a night watchman, and the soldier who had been a civil engineer, with the result that, in the illustration, the dependents of the one receiving the higher salary received a greater sum for support. But that does not show that the legislature acted capriciously in providing that the benefits payable shall be according to the compensation received by the employe; the legislature merely adopted a convenient—apparently the most convenient—measure of allotment. Another comparison is of the employe who served "for only a brief period and an employe who had served many years. . . ." This, again, is only an incident in the system. The New York court, in *Henn v. City of Mt. Vernon*, 198 App. Div. (N. Y.) 152, had no difficulty in disposing of such inequalities. By the New York statute, the amount payable by the municipality was the soldier's pay from the federal government subtracted from what he used to receive from the city; the statute applied to employes of long standing as well as of recent employment and took no account of comparative salaries. We have heard of no complaint against the Workmen's Compensation Act because the compensation is the same for injuries of a recently employed workman as it is for an employe of long standing. It is said to be an "anomalous provision" that in the case of a soldier who owns real estate and has dependents, a municipal subdivision may not be able to collect the tax owing by him on the real estate, yet "the subdivisions are subject to assume the heavy financial burdens imposed upon them by this legislation." We are unable to see how that incident supports the view that the legislature acted capriciously in providing benefits for a soldier's dependent. The municipal subdivisions throughout the state are the agencies of the state and must raise such taxes as the state directs, subject, of course, to the uniformity provision which is not in question here. Another comparison made in the majority

opinion is of the two citizens, each receiving a salary of $4,000 a year, one from the state, the other from private industry. Only recently, we held that in providing conditions of public employment, the legislature might require a city to prefer a soldier who had passed the civil service examination and give him a preferential position over others who had also passed the same examination. The comparison between the public and the private employe, therefore, even though it shows accidental inequality in result, is not one which makes this legislation unlawful class legislation; if the legislature may make the preference—and this court has held that it may—it is immaterial that the soldier in public employment may be in a better position than the private employe. With respect to these illustrations suggested by the majority, parts of the opinion of the New York court in *Henn v. Mount Vernon,* 198 App. Div. (N. Y.) 152, may be quoted. At pp. 155-157, it was said: "Defendant's brief urges that the act, in the feature here under consideration, violates section 1 of the 14th Amendment of the Federal Constitution, in that it denies to others who served in the war equal benefits because it confers such advantage upon merely a selected class of the few, who chanced to be in city or municipal service; whereas the great mass of those who served are left to lose the difference between their ordinary earning and their military pay. I am not impressed with this reasoning. It appears to me to be no more apt than it would be against the various statutes giving to veterans preferences in public employment, which have been so uniformly regarded as constitutional that it is difficult to find a decision directly passing upon the question. . . . Defendant's brief also contends that the said provision here under consideration violates the State Constitution in two respects, viz.: Section 10 of article 8, in that it requires the city to make to the plaintiff a gift, and that too for something which is not at all a city purpose; and also section 28 of article 3,

because it requires the city to grant to the plaintiff extra compensation. Both of these contentions amount to one and the same thing, namely, that the effect of the provision is to require the city to pay the plaintiff for services not rendered by him. This contention to my mind presents the only serious question involved. . . . The World War and our participation in it constituted a very great emergency, and the very widest scope in favor of legislative power to provide for action therein should be given by way of constitutional interpretation. We have recently had a striking instance of this in the decisions both of the Court of Appeals and of the United States Supreme Court maintaining the constitutionality of the recent rent statutes of this State. (See *People ex rel. Durham Realty Corp. v. LaFetra,* 230 N. Y. 429; *Marcus Brown Co. v. Feldman,* 256 U. S. 170). It is, indeed, now somewhat difficult to define what the law-making power may not do in aid of the prosecution of a war in which the nation is engaged, and, therefore, as well each component part of the nation. My conclusion, therefore, is that the said provision of chapter 435 of the Laws of 1917 is constitutional and valid." See, also, *Hoyt v. Broome County,* 285 N. Y. 402; 34 N. E. (2d) 481; 134 A. L. R. 916.

We were told in argument that "The New York decisions are . . . not persuasive in reasoning and are moreover distinguishable because based on a constitution which did not contain any prohibition against special legislation." That comment must be rejected as unsound. Some state constitutions, like ours, contain provisions prohibiting class legislation in given circumstances; some do not. But the legislatures of all the states are limited in classification by the equal protection clause of the 14th Amendment which prohibits arbitrary or capricious class legislation by the states, the test of valid legislation, when the 14th Amendment is invoked, being the same test that is applied when a specific provision against special legis-

lation is invoked. The object of the prohibition against special legislation in the state constitution and the object of the prohibition against infringement of the rights guaranteed by the equal protection clause are the same—to preserve equality—and, for that reason, the same test of validity is applied. In *Rapid Transit Corp. v. New York,* 303 U. S. 573, at page 578, it was said, "Indeed, it has long been the law under the 14th Amendment that 'a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it, . . .' " The provisions against special legislation may be invoked to prohibit a favored few from receiving something to which they are not entitled, at the expense of the many; the equal protection clause is applied to protect the rights of the many from infringement in the interest of a favored few; they are alternate expressions of the same thing.

Public employment rests on contract with the state or some subordinate governmental agency, which must comply with the lawful directions of its principal. The statute is merely a term in the contract; all employes who bring themselves within its terms are entitled to its benefits; the regulation is therefore not discriminatory in any unlawful sense. Being a term in every contract of public employment, the court may not say that the legislature should not have graded the benefit according to the wages of the employe; some measure was required and, as that adopted was rational, the courts are bound by it.[8] It was suggested that inequality may result from the fact that an employe, whose period of employment has been short, receives, to that extent, more benefit than one of long standing; but such result is also only an incident inherent in the regulation and not a result capriciously designed by the legislature. Dependency is a fact which must be shown and we understand that proof of it is required in the adminis-

---

[8] See cases cited in notes 2 and 3.

tration of the Act: *Benefits to Dependents of Persons in Military Service,* 43 D. & C. 411. Something is also said about an employe of one day's standing, but that contingency, as a practical element in administration, was ruled out years ago; if short time employment is fraudulently obtained for the purpose of obtaining the benefit of the regulation, it will fail, as Deputy Attorney General Hargest advised in 1918: See, *State Employees in Military Service, No. 2,* 27 Dist. Rep. 872. These opinions, rendered by the Department of Justice, are referred to only for the purpose of showing that there is no difficulty in construing the Act in a constitutional sense and that, in fact, it has been so administered; the opinions are not binding on this court but the fact that the Act can be so construed and applied is binding; the court must accept and apply a reasonable construction where that is possible: section 52, Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS section 552.

The opponents of the Act assert that the legislature could not have had any basis for the classification. To succeed, they must establish that assertion; if they establish it, the Act is unconstitutional. To assert is, of course, not enough; we find nothing to support the assertion; the presumption is that the legislature acted in good faith and had some reason for doing what it did. The statute grants leave of absence during the period of military service and six months thereafter, a provision of the Act agreed to be valid. The employe therefore remains an employe, though not on duty, during all that period. It would seem clear, as was held in New York, that the preference of the soldier over employes in private industry does not deprive the private employe of the benefit of the equal protection clause of the 14th Amendment, and, by the same standard, does not constitute unlawful discrimination in favor of the public employe over the private employe. In *Com. ex rel. Graham v. Schmid,* 333 Pa. 568, 571, we recognized that "Preferences for war veterans in public

employment have been widely enacted;" it is a fact which our legislature must be assumed to have known. It was also said in that case that the legislature might have justified the preference by attributing ". . . a certain credit in recognition of the discipline, experience and service represented by their military activity. No one should deny that these advantages are conducive to the better performance of public duties, where discipline, loyalty, and public spirit are likewise essential. The fact that veterans, either through voluntary enlistment or conscription, have been to wars for the preservation of their country should be given some consideration. It is the greatest service a citizen can perform, and it comes with ill grace for those of us not in such wars to deny them just consideration." In the *Henn* case, the Appellate Division said that participation in the world war ". . . constituted a very great emergency, and the very widest scope in favor of legislative power to provide for action therein should be given by way of constitutional interpretation." In the *Hoyt* case, 285 N. Y. 402, 34 N. E. (2d) 481, the New York Court of Appeals said: "We have held that pensions to municipal officers and employees are not grants of gratuities, but a recognition by the Legislature of an obligation founded upon the fidelity of services rendered for the State through its political subdivisions;" the court referred to the fact that the preferences ". . . were devised to secure the continuance in the public service of those who should be found competent to discharge the duties thereof." Our legislature doubtless had all these considerations in mind.

The existence of the Act of 1917, and amendments, constituted an offer to anyone accepting or remaining in public employment, that if he joined the armed forces, he should have the specified leave of absence and his dependents, if any, should receive dependency payments. There is no doubt that when the legislature, with executive approval, made the promise of the state

contained in the Act, it did so with the conviction that its action would result in obtaining better performance of public duty, superior discipline, loyalty and public spirit; in short, a more competently performed public service than would have resulted without it. It was certainly an encouragèment to enlist and may have induced employes to enlist without claiming deferment on the ground of dependents, which, but for the promise of the state, the employe might not have surrendered. We think his confidence in the promise of the state was not mistaken; that the considerations we have mentioned are such that this court should not declare them insufficient to justify the classification made by the legislature, and that, on the contrary, even if the wisdom of the legislation can be doubted, this court may not deny the power of the legislature to make the classification.

We think the bill to enjoin enforcement of the Act should be dismissed.