CHARLES E. RIEBEN, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8932.    Promulgated February 19, 1947.

*Charles E. Rieben, Jr.*, pro se.
*W. D. Harris, Esq.*, for the respondent.

OPINION.

JOHNSON, *Judge*: The sole question here involved is the nature of the payment of $1,399.17 to petitioner's wife by the Commonwealth of Pennsylvania. If it was a gift or gratuity, then it was not taxable. If, however, it was additional compensation to petitioner in connection with his employment by the Commonwealth of Pennsylvania, then it should have been included in his gross income and is taxable to him.

The Act of June 7, 1917, as amended (65 Purdon's Pa. Stat. Ann., secs. 111–113), under which the payments were made, provides that when a regular civil service employee of the Commonwealth of Pennsylvania, or any political subdivision thereof, shall, in time of war or contemplated war, enlist, enroll, or be drafted in the military or naval service of the United States:

* * * he shall not be deemed or held to have thereby resigned from or abandoned his said office or employment, nor shall he be removable therefrom during the period of his service, but the duties of his said office or employment shall, if there is no other person authorized by law to perform the powers and duties of such officer or employe during said period, be performed by a substitute, who shall be appointed by the same authority who appointed such officer or employe, if such authority shall deem the employment of such substitute necessary. Such substitute shall receive so much of the salary or wages attached to said office or employment as shall not be paid to the dependent or dependents of said officer or employe, as hereinafter provided, and such substitute may receive such further compensation, from appropriations made for that purpose or otherwise, as may be required, when added to the amount received under the provisions of this act, to constitute a reasonable compensation for his services, in the opinion of the authority appointing him. [Sec. 111 of the act.]

Section 112 of the act provides that if such employee have a "dependent" or "dependents" he "*may* at the time of his enlistment, or immediately thereafter" file a written statement, executed under oath, with the head of his department, setting forth the fact and date of his enlistment and "his intention to retain his said office or employment and to resume the duties thereof after the expiration of his service in

the military or naval service," the name and address of his wife or other dependents:

* * * and requesting and directing that one-half of the salary or wages of his said office or employment, not exceeding two thousand ($2,000.00) dollars per annum, shall be paid during his service in the military or naval service * * * as follows: If he have a wife, to his wife, for her use and that of his children; if he have children and no wife, then to such person as he may designate for the use and benefit of his children.

* * * * * * *

* * * all sums so directed to be paid shall be paid to the person designated, in the same proportional instalments, as nearly as may be, as the salary or wages of such person were theretofore paid to him. With such statement he shall also file powers of attorney, authorizing the proper dependents to receive their proportion of said salary or wages as aforesaid. [Sec. 112 of the act.]

The act was amended in two minor respects: (1) In 1941, authorizing the employee to direct payment of part of the salary he had been receiving into the State Employees' Retirement Fund, and the amount so paid into the retirement fund would reduce the amount otherwise payable to the employee's dependents; and, (2) in 1942, to provide that in no case should the one-half of the employee's salary, when added to the remuneration paid him by the United States, exceed the salary or wages paid the employee by the commonwealth when he entered the military service. (65 Purdon's Pa. Stat. Ann., sec. 112, as amended, and 71 *ibid*, sec. 1756.2.)

Petitioner contends that the payments were a gift, and under section 22 (b) (3). Internal Revenue Code, were not required to be included in his gross income and were exempt from taxation.

Petitioner cites, in support of his contention that the payments were a gift, *Kurtz* v. *City of Pittsburgh* (1943), 346 Pa. 362; 31 Atl. (2d) 257, wherein the Supreme Court of Pennsylvania characterized the payments under the law here in question as "gratuities" to the dependents of public employees and stated that these payments are "certainly not compensation for the service these employees are rendering the state and its political subdivisions."

This case held the act of June 7, 1917, as amended, void under the constitution of the Commonwealth of Pennsylvania, in so far as it provided for payments to the dependents of public employees in the armed services, as being violative of the state constitutional prohibition against any "local or special law * * * granting to any * * * individual any special or exclusive privilege or immunity * * *."

The majority opinion in this case is based primarily on the preferential treatment accorded public employees in the armed services in contrast with those who are not, holding that such classification is arbitrary.

In a dissent three members of the Supreme Court expressed the opinion that the classification is not arbitrary, on the ground "that the statute in question is a regulation of public employment in its relation to national defense," and, furthermore, that it "grants leave of absence during the period of military service and the employee remains an employee."

In discussing the legal justification of the act and the legislative intent and reason for its passage, the dissenting judges declared:

* * * There is no doubt that when the legislature, with executive approval, made the promise of the state contained in the Act, it did so with the conviction that its action would result in obtaining better performance of public duty, superior discipline, loyalty and public spirit; in short, a more completely performed public service than would have resulted without it. * * *

As petitioner rightly concedes in his brief, the decision of the Supreme Court of Pennsylvania is not controlling or binding upon this Court in passing on the issue here presented. We have quoted from both the majority and minority opinions, however, to show that diverse views were held by members of the state court, both as to the constitutionality of the act, and, of more pertinence here, the reasons for and the nature of the payments thereunder.

The pending case involves a Federal revenue law; the application of section 22 (a) of the Internal Revenue Code.

The Congress "is not limited by state law in its designation of taxable income." *Coast Carton Co.* v. *Commissioner* (C. C. A., 9th Cir., 1945), 149 Fed. (2d) 739. Nor is state law determinative of whether the sum here in question was acquired by gift within the meaning of section 22 (b) (3). As was said by Chief Justice Hughes in *Lyeth* v. *Hoey* (1938), 305 U. S. 188, "the question as to the construction of the exemption in the Federal Statute is not determined by local law. * * * It is not determined by local characterization." As the learned chief justice points out, this is necessary "so as to give a uniform application to a nation-wide scheme of taxation."

If this rule did not obtain, we might be confronted by this incongruous situation. If the State of New York should enact a law identical in its terms with the Pennsylvania statute under consideration and the highest court of New York, in construing and passing upon the validity of its law, and unlike the Pennsylvania Supreme Court, should hold that payments under it were not gratuities, but compensation, then payees under the New York act would be subject to the payment of a Federal income tax, while those under the Pennsylvania statute would not.

For the same reason that a *decision* by a state court that payments authorized under a state statute were gratuities and not compensation is not binding upon the Federal Government or its courts in admin-

istering and construing its revenue laws, neither is a labeling or designation in the legislative act itself, that such payments are gratuities, binding. *Georgia S. Williams* (1937), 36 B. T. A. 974.

Petitioner in the *Williams* case had been employed by the Philippine Government to look after Filipino students sent to the United States for education. Her position was abolished when the Philippine Government discontinued its practice of sending students to the United States. After her employment was terminated, petitioner received a payment of $2,982 from the Philippine Government under the terms of a Philippine statute entitled "An Act to Provide for the Payment of Retirement Gratuities to Officers and Employees of the Insular Government Retired from the Service as a Result of the Reorganization or Reduction of Personnel Thereof." This act provided that such employees "shall be entitled to a gratuity as follows" and proceeding to set forth the conditions obtaining, the amount of the "gratuity" depending on length of service and rate of remuneration. In construing the effect of this language by the Philippine Legislature the Board of Tax Appeals stated:

Whether the amount received by the petitioner is subject to United States income tax depends upon whether it is covered by the United States revenue act. That statute taxes amounts received as compensation for services, and if the amount here in question is within the meaning of that language in United States law, it may not be excluded because of any label placed upon it by the Philippine Legislature. This is true as to a conflict between state nomenclature and a Federal revenue statute, as well as a conflict between a characterization under the law of a foreign government and that under our revenue law. * * *

It was held in the *Williams* case that the sum paid petitioner was not a gift, but compensation for services, in that the Philippine statute "created a legal obligation inuring to the benefit of each employee retired," and that, but for the use of the word "gratuity" in the statute, no one could doubt "that payments were a commonplace system of retirement pay inspired, not by spontaneous generosity, but by recognition of services rendered," and that while the Philippine legislature was not obligated to enact the statute, this did not stamp the amount received as a gift. "It was a statutory method of paying her an additional amount for her service on its discontinuance."

Another case in point is *P. H. Marcum*, 10 B. T. A. 1192, wherein it was held that an amount equal to one year's pay allowed an officer of the United States Army honorably discharged under an Act of Congress was in the nature of a bonus or additional compensation and not a gratuity or gift, and therefore, was taxable income. In so holding the Board said:

* * * But for the past service of petitioner and the possibility that similar service might be desired of him in the future, it can not reasonably be inferred

that Congress would have made the provision for an additional one year's pay for petitioner, or any percentage of additional pay for other officers eliminated from the service. While there was no legal obligation on the part of the Government to bestow a bonus of one year's pay on petitioner, there was certainly sufficient consideration for so doing.

In the pending case we do not have to indulge the presumption that the legislature of Pennsylvania contemplated that similar service might be desired of its employee in the future, for the statute mandatorily requires that before one is eligible for benefits thereunder he must file a sworn statement with his superior in office "that he intended to retain his office and resume the duties thereof after the termination of his military service."

"Payment of an additional sum by an employer to an employee carries a strong presumption that such payment is for services rendered." *Wilkie* v. *Commissioner*, 127 Fed. (2d) 953. In *Samuel Poorman, Jr.*, 45 B. T. A. 73, it is held that payment of a substantial sum to the petitioner by his former employer constitutes additional compensation rather than a gift. See also *Shell Employees' Benefit Fund*, 44 B. T. A. 452.

It is well settled that one of the controlling factors in determining whether the payment from an employer to an employee is a gift or compensation is the *intention* of the parties, particularly that of the payor, which must be gathered from the facts and circumstances surrounding the transaction. *Wilkie* v. *Commissioner*, *supra*.

In the pending case the legislative intent and reasons for granting the benefits contained in the Pennsylvania statute must be determined from the provisions of the act itself. An examination of it reveals that all payments authorized thereunder are based solely upon the services of the employee to the state. Furthermore, the payments are measured by the salary of the employee, which is a cogent circumstance to indicate it was compensation. *Wilkie, supra; Levey* v. *Helvering*, 68 Fed. (2d) 401.

The dissenting opinion in the *Kurtz* case, *supra*, aptly describes the act as one "regulating public employment in its relation to national defense" and states further that it "grants leave of absence during the period of military service and the employee remains an employee" during service in the armed forces. The act stipulates that, if during the absence of such employee it becomes necessary to have some one perform his duties, a substitute may be appointed, "who shall receive so much of the salary or wages as shall not be paid to the dependents of such employee," plus such further amount as may be necessary to constitute reasonable compensation.

Payments to dependents are authorized under section 112, wherein such employee "may" request and direct that "one half of his salary or wages" while in the armed forces be paid to the dependent designated by him.

It appears therefore that the payments to petitioner's wife in this case are expressly directed by the act to be paid out of the "salary or wages" of petitioner. "Salary" and "wages" are specifically defined in section 22 of the Internal Revenue Code as taxable gross income. Petitioner's contention that the payment by the state was a gift is not tenable under the facts of this case. "A gift" for income tax purposes is the voluntary transfer of property to another without consideration. *Levey* v. *Helvering, supra.*

While there was no legal obligation on the part of the Commonwealth of Pennsylvania to make such payments, there was certainly sufficient consideration for so doing, since the act required that, before petitioner's wife was eligible to receive same, petitioner had to make a statement under oath "that he intended to retain his office and resume the duties thereof after the termination of his military service." We think the dissenting opinion in the *Kurtz* case, *supra*, accurately sums up the legislature's reason for passage of the act in this language:

* * * It did so with the conviction that its action would result in obtaining better performance of public duty, superior discipline, loyalty and public spirit; in short, a more completely performed public service than would have resulted without it. * * *

Petitioner contends, however, that, since the payments were made to his wife while he was in the military service and "he had no control of the money" so paid to her, it should not be taxable as income to him. This contention is not sound, since the payments under the act were *his* "salary" and not hers.

Furthermore, while the payments were made to the wife by the commonwealth, it was not only because of *his* employment that she was eligible to receive same under the law, but because *he* so elected and caused such to be done. The act was not automatic—it was optional with each employee whether its provision should apply in his individual case. It stipulated that the employee "may" do certain things therein enumerated and *then* payments to his dependents would be made. Without such affirmative action by the employee, his dependents would receive nothing.

Petitioner here had to do four things before his wife could receive these payments: (1) Elect that he would avail himself of the law's provisions; (2) make oath of his intention to retain his job and resume its duties after his war service; (3) request and direct that one-half of his salary be paid to his wife; and (4) execute power of attorney authorizing such payments to her.

Petitioner therefore procured the payment of this income to his wife, which power, under our revenue laws, is equivalent to the ownership of the income and it is taxable to him. *Lucas* v. *Earl*, 281 U. S. 111; *Burnet* v. *Leininger*, 285 U. S. 136; *Helvering* v. *Eubank*, 311 U. S. 122; *Helvering* v. *Horst*, 311 U. S. 112.

From the syllabus of the last cited case we quote:

The power to dispose of income is the equivalent of "ownership" and the exercise of that power to procure the payment of income to another is the "enjoyment", and hence the "realization" of the income by him who exercises it, so as to render the income subject to tax.

The fact that petitioner under the statute could not receive the payments himself or expend them does not relieve him of his tax liability therefor. It has been held that the Congress "may tax, not only ownership, but any right or privilege that is a constituent of ownership." *Burnet* v. *Wells*, 289 U. S. 670.

Respondent in his brief correctly concludes that "the petitioner could and did control the payment of the sum in question to his wife, and that it was compensation which he had paid over to her." We quote from the Supreme Court's opinion in *Harrison* v. *Schaffner*, 312 U. S. 579.

* * * the power to dispose of income is the equivalent of ownership of it and * * * the exercise of the power to *procure* its payment to another, whether to pay a debt or to make a gift, is within the reach of the statute taxing income "derived from any source whatever". * * *

Petitioner cites, in support of his contention that the payments were a gift, I. T. 3574, 1942-2 C. B. 52, wherein the Commissioner administratively ruled that payments by the Federal Government under the Servicemen's Dependents Allowance Act of 1942 (37 U. S. C. A., sec. 201, et seq., to enlisted men's dependents are not taxable, but are "in the nature of a gift." This ruling is not applicable here. The Federal statute there construed differs from the Pennsylvania statute here involved. Among other differences, the fundamental one is this: The Federal statute, unlike the Pennsylvania statute, does not require the personnel whose dependents are entitled to pay to agree to resume the duties of the employment in which they were engaged at the time of their induction into the armed forces, upon the termination of such military service. It is this provision which this Court held in the *Marcum* case, *supra*, constitutes a valid consideration and stamps the payments as compensation and not a gift.

Another ruling of the Commissioner, made two years later, viz., I. T. 3602, 1943 C. B. 64, is more nearly in point to the question here involved. In this last ruling the Commissioner held that, where a private employer made payments to dependents of former employees who were in the armed forces, such payments represented income constructively received by such former employees and were taxable to them for Federal income tax purposes.

Reviewed by the Court.

*Decision will be entered for the respondent.*

ARNOLD, KERN, and LEMIRE, *JJ.*, concur only in the result.