# Penn Iron Company, Limited, Appellant, *v.* City of Lancaster.

*Municipalities—Supply of water to citizens—Contracts.*

While it is no part of the ordinary and necessary duties of a municipal corporation to supply its citizens with gas and water, it is nevertheless true that it may lawfully do so.  Such contracts are not made by a municipal corporation by virtue of its powers of legal sovereignty, but in its capacity of a private corporation.   The supply of gas and water may be accomplished through the agency of individual or private corporations, and in many instances it is accomplished by such means.   If the power is granted to a borough or city, it is a special private franchise and may be for the emolument and advantage of the city and for the public good, but when such a corporation engages in things not public in their nature, it acts as a private individual, no longer legislates, but contracts, and is as much bound by its engagements as a natural person.

Where an iron company has been paying for a long series of years to a municipality a water rent of a fixed amount, the municipality cannot after having accepted a semiannual payment of rent, and without notice to the iron company, and without opportunity to the iron company to appeal to the water committee as provided by ordinance, introduce a water meter, and charge for the second half year a greatly increased rent.

*Equity—Equity jurisdiction—Remedy at law—Discretion of court.*

A court of equity may take upon itself to say whether the common-law remedy is under all the circumstances and in view of the conduct of the parties, sufficient for the purpose of complete justice, or whether the intervention of chancery may not for that purpose be required and beneficially applied.

An open threat by the authorities of a municipality to close down an establishment employing over 400 men by arbitrarily cutting off its water supply, presents a case free from all difficulty as to the jurisdiction of a court of equity to interfere by injunction.

Argued Nov. 11, 1903. Appeal, No. 56, Oct. T., 1903, by defendant, from decree of C. P. Lancaster Co., Equity Docket No. 3, dismissing bill in equity, in case of Penn Iron Company, Limited, v. City of Lancaster et al. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Bill in equity for an injunction.

The facts appear by the opinion of the Superior Court.

*Error assigned* was decree dismissing the bill.

*J. W. Appel*, of *Appel & Appel* and *A. J. Steinman*, for appellant.—Water rents are not imposed or collected in the exercise of the taxing power, but the obligation to pay for the use of water rests upon an implied contract on the part of the consumer to make compensation for water which he has applied for and received on the terms and conditions made public: Rieker v. Lancaster City, 7 Pa. Superior Ct. 149; Brass v. Rathbone, 153 N. Y. 435 (47 N. E. Repr. 905).

When a municipal corporation engages in things not public in their nature, it acts as a private individual, no longer legislates but contracts, and is as much bound by its engagements as is a natural person: Western Saving Fund v. Phila., 31 Pa. 175; Wheeler v. Phila., 77 Pa. 338.

The case is a proper one for the interposition of equity:

Bierbower's App., 107 Pa. 14; Com. v. R. R. Co., 24 Pa. 159; State v. Jersey City, 45 N. J. L. 246; Young v. Boston, 104 Mass. 95; Kemble v. Titusville, 135 Pa. 141; Brymer v. Butler Water Co., 172 Pa. 489; Easton, etc., Pass. Ry. Co. v. Easton, 133 Pa. 505; Arthur v. Polk Borough School District, 164 Pa. 410; St. Mary's Gas Co. v. Elk County, 168 Pa. 401; Ridgway v. Bridgeport, 5 Montg. 73; School Boards v. Monongahela Water Co., 15 Pa. C. C. Repr. 329.

*J. W. Brown*, with him *C. Reese Eaby*, city solicitor, and *Charles R. Kline*, for appellee.—This is not a proper case for the interference of a court of equity, for the plaintiffs have an adequate remedy at law: Harrisburg's App., 107 Pa. 102; Mann v. Easton, 2 Northampton, 177; Foster v. Philadelphia, 12 Phila. 511; Howard's App., 162 Pa. 374; Stroud v. Philadelphia, 61 Pa. 255; Silkman v. Water Commissioners, 152 N. Y. 327 (46 N. E. Repr. 612); McHenry v. Jewett, 90 N. Y. 58; Girard Life Ins. v. Philadelphia, 88 Pa. 393.

OPINION BY ORLADY, J., July 28, 1904 :

The plaintiff is a limited partnership, which owns and operates extensive mills and works in the city of Lancaster, employing about 450 men, and consuming daily over 150,000 gallons of water. The defendant is a municipal corporation, a city of the third class, owning and operating a water plant, and furnishing its citizens with water from its mains and pipes. To conduct this branch of its affairs, there was a special water department created; and ordinances were enacted providing for a system of levying, assessing, and collecting water taxes. A schedule of water rents was provided for many industrial establishments and private uses, but no rate was fixed for the plaintiff company.

The rate charged per annum to all consumers was from April to April of each year. From 1879 to October 1, 1899, the plaintiff company had been a consumer of water, for which it paid an annual water rent of $400, payable semiannually. It does not clearly appear how this rate originated, but it is an admitted fact that this sum had been paid annually for over twenty years. During this period of time an increased rate was urged by the city on two occasions, but on an appeal to

the water company having charge of the dispute amount was
not changed.

This controversy arose by the introduction of a meter by
the city, and a demand that the plaintiff should pay according
to meter rates. It is admitted that the city has power to charge
consumers of water at meter rates, and to adopt a just dis-
crimination of rates affecting certain classes of consumers, as
was decided in Rieker v. Lancaster City, 7 Pa. Superior Ct. 149.

The plaintiff's contention is that under a special contract
or continued course of business for twenty years and upwards,
the defendant company could not change the price per annum
in the middle of the year. Under the undisputed system in
force in the city, it had entered on the year beginning April 1,
1899 and ending April 1, 1900, as it had begun each of the pre-
ceding years, that is without having received notice of any
change in the annual water rate, or that the charge should be
by meter instead of a fixed sum.

The city manifestly took this view of the case as it rendered
a bill to the iron company for water rent to October 1, 1899,
at the rate of $200 for six months, and accepted payment
therefor on October 21, 1899, with its regular discount of five
per cent. A meter was placed at the plaintiff's mill in Sep-
tember, 1899, and in January following, a bill was rendered
for the use of water from October 1, 1899, to January 1, 1900,
amounting to $641.38, in regard to which the learned judge said
in his opinion : " No rate had ever been fixed either by council
or water company for establishments of this character, and no
notice of the rate intended to be charged against the plaintiff
was ever given to it before the bill of $641.38 for 12,837,000
gallons, was on or about January 1, 1900, furnished to it."

While the ordinance requires that a written or printed notice
of the meter rates showing the amount of rent to be charged
shall be left at the premises on or before the first day of May
in each year, there is no proof to show that the iron company
had received notice that it would be charged meter rates, nor
that any rate had been fixed for its use of water. The clerk
of the water company testified that he had sent a notice to the
iron company on the first day of April, 1899, stating that a
meter would be affixed to its premises, but he did not specify
the rate claimed by the city.

The ordinance further provides that controversies as to rates are to be considered by the water committee of the city, which is authorized and empowered to make a just and equitable abatement from the assessment of the water rent; this to be in the nature of an appeal to be heard before the 20th day of May in each year.

The plaintiff's contention that there was a special contract for an annual charge of $400 is supported by the testimony of the superintendent of the waterworks, who, when asked in regard to the payment by the iron company from 1888 to 1899 of the yearly water rent on special contract not according to the schedule rates, answered, " Well, I suppose you might call that a special contract. It was just continued after they appeared every year at $400 from April 1, 1888, to October 1, 1899, and paid by the company at that rate."

It would not only be reasonable but vitally important for large industrial plants to have their water rate and the time when the annual rates should begin and end fixed with certainty under the ordinance and rules of the company. This company being outside of the schedule list of fixed rates, the amount of the annual charge could only be determined by special contract, there being no meter then in use.

And when on April 1, 1899, a new year was entered upon without notice of any change in the rate, and the city had recognized the previous annual rate as controlling for that year by sending its usual semi-annual statement and accepting in October $200 less the discount, as payment, it must be held to a reasonable interpretation of its course of dealing. Without notice of the change of rate, without fixing the meter charge, without the right of appeal, the water committee could not arbitrarily, in the middle of the term, change the rate from the contract price to a meter charge, and then enforce compliance of this illegal demand by cutting off the supply of water from an important industry.

In regard to the charge of five cents per 1,000 gallons being oppressive, it need only be stated that the ordinance provides for the adjustment of that question by an appeal to the water committee in the first instance, which right of appeal was not given to the plaintiff company at the beginning of the year.

While it is no part of the ordinary and necessary duties of

the municipal corporation to supply its citizens with gas and water, it is nevertheless true that it may lawfully do so. Such contracts are not made by a municipal corporation by virtue of corporation. The supply of gas and water may be accomplished through the agency of individual or private corporations, and in many instances it is accomplished by such means. If this power is granted to a borough or city, it is a special private franchise and may be for the emolument and advantage of the city and for the public good, but when such a corporation engages in things not public in their nature, it acts as a private individual, no longer legislates, but contracts, and is as much bound by its engagements as a natural person : Wheeler v. Philadelphia, 77 Pa. 338; Savings Fund v. Philadelphia, 31 Pa. 175; White v. Meadville, 177 Pa. 643; Baily v. Philadelphia, 184 Pa. 594.

The jurisdiction of the court below to entertain the bill filed cannot be seriously questioned; that it generally depends not so much on the want of a common-law remedy, as upon its inadequacy and its exercise is a matter which often rests within the discretion of the court; in other words the court may take upon itself to say whether the common-law remedy is, under all the circumstances and in view of the conduct of the parties, sufficient for the purpose of complete justice, or whether the intervention of chancery may not for that purpose be required and beneficially applied : Bispham's Eq. sec. 484.; Bierbower's Appeal, 107 Pa. 14; Bussier v. Weekey, 11 Pa. Superior Ct. 463.

Under the facts in this case, the open threat to close down an establishment employing over 400 men by arbitrarily cutting off the water supply to the plaintiff, presented a case free from all difficulty as to the jurisdiction of the court to restrain it by an injunction.

For the reasons given, we reverse the decree of the court below; the bill of the plaintiff is reinstated and an injunction directed to issue in accordance therewith.