## City of Philadelphia v. Philadelphia & Reading Railroad Company

*Frank F. Truscott* and *Karl I. Schofield,* for plaintiff. *White and Williams,* for defendant.

SMITH, P. J., April 2, 1948.—This matter comes before the court sitting without a jury on a sci. fa. and an affidavit of defense thereto to have legally determined whether the City of Philadelphia possesses a lien for

water rent assessed and not paid for the years 1937 and 1938 against real estate owned by the Philadelphia and Reading Railroad Company.

## Findings of fact

1. In the years 1937 and 1938 defendant was the owner of a tract of land on Gurney Street for a distance of 600 feet, on Mascher Street for a distance of 45 feet, on Front Street for a distance of 56 feet and 593 feet on the Philadelphia and Reading Railroad, in the 33rd ward of the City of Philadelphia.

2. On the said tract of land there were erected 57 individual garages which were there standing in the said years 1937 and 1938.

3. On January 24, 1942, the City of Philadelphia filed a claim for water rents against said defendant for the years 1937 and 1938 in the sum of $118 for each said year, which together with penalty and costs of $36.40, amount to the sum of $272.40 under the provisions of an ordinance of city council as of December 2, 1916 (p. 499).

4. The said ordinance is as follows:

"An Ordinance regulating appliance and meter charges for water, establishing minimum and ferrule rates proportionate to the size of the connection to the main, designating certain establishments and appliances for which water shall be furnished by meter and authorizing the installation of meters.

"Section 1. The Select and Common Councils of the City of Philadelphia Do ordain, That on and after January 1, 1917 except as hereinafter provided in Section 9, the Director of the Department of Public Works is hereby authorized and directed to charge for water and water appliances in accordance with the following schedule:

### Schedule of Rates

Automobiles (private garage without water) each automobile, two ($2.00) dollars".

5. The said Ordinance of 1916 was amended by the Ordinance of February 19, 1946 which discontinued the above charge for automobiles (in private garages without water) but retained the charges delinquent prior to January 1, 1946.

6. The water rents on the said tract of land were delinquent for the years 1937 and 1938.

7. For and during the years 1937 and 1938 there was no water fixture or connection on the said land of defendant.

8. On the said land there were 57 private garages without water or water meters, appliances or ferrules.

9. There is no property adjacent to the property of defendant from which water could be drawn or carried.

10. There was no water furnished by the city to the said premises occupied by the 57 garages.

### Discussion

The question here involved is as to the reasonableness of the Ordinance of December 2, 1916 and the intention of the city council as expressed in the said ordinance. It is admitted by the city that at the time the claim was made for water rent that this parcel of land had no water connection of any kind or appliance from which water could be had, and that there was no water furnished. The claim is "for water furnished by said city to said premises duly rated and assessed upon said property, and registered for non-payment according to law, together with the penalties and other charges, lawfully due thereon", etc. If the claim is specifically "for water furnished" and it is admitted that the land had no ferrule thereon or any kind of appliance from which water could be had, it would appear that the probata does not follow the allegata. It is also difficult to see where any claim could exist. The city relies on the ordinance of 1916 which authorizes a charge for water and water appliances where there are automobiles (in a private garage without water).

It is reasonable to believe that the city council intended to impose a water rate on automobiles in garages (without water) where there was some appliance or ferrule on the owner's property adjacent to the garages from which water could be obtained. A study of the preamble of the ordinance and the quoted section seems to us to show that council intended to authorize the Department of Public Works to charge for water received by the property owner or for water appliances installed on said property. In the case before us no water was furnished and none was available. It must be remembered that a municipality which goes into the business of selling water at a certain rate stands upon the same footing as a private corporation engaged in the same business. In the case of Jolly v. Monaca Borough, 216 Pa. 345, 349, it was held:

"If, then, the borough, when furnishing a supply of water, stands upon the same footing as a private corporation, it is entitled to the same privilege of receiving payment for the service rendered. It would be a strange place to draw the line, to hold that service must be rendered, and water supplied by the borough, without any compensation being made therefor.

"Water rates are paid as the compensation or equivalent, by those who choose to receive and use the water, as a commodity furnished by the borough. No one is compelled to receive or use the water, and when anyone does so, with knowledge of the rates charged, he by implication agrees to pay those rates, and his obligation rests upon contract.

"The collection of water rates should not be in any way confused with the exercise of the power of taxation. In 30 Am. & Eng. Ency. of Law (2d ed.), 422, the cases are thus summed up: 'Water rates paid by consumers are in no sense taxes, but are nothing more than the price paid for water as a commodity. The obligation to pay for the use of water rests either on

express or implied contract on the part of the consumer to make compensation for water which he has applied for and received, on the terms and conditions made public.' "

In Central Iron & Steel Co. v. Harrisburg, 271 Pa. 340, 344, 345, it was held:

"In furnishing a supply of water, the municipality acts in the same capacity as a private corporation, and not by reason of obligations imposed upon it by law. . . .

"Its contract relationships are to be determined as are those of any water company. If it stipulates to supply a customer under special agreement for a specified term at a fixed price, then it will be held to its obligation (Penn Iron Co. v. Lancaster, 25 Pa. Superior Ct. 478) ; but, as in all cases, one claiming to enforce a contract must establish the fact that there was such an understanding, express or implied, as he seeks to enforce."

It must be apparent that a private corporation could not make a charge for water against an individual which it did not furnish him and that it could not sustain a charge for water against one who could not get it. In this respect, we are also faced with the absence of any fact showing that near or adjacent to the property of defendant there was any city water main which might be tapped by defendant.

*Conclusions of law*

1. The allegata of plaintiff does not follow its probata.

2. The City of Philadelphia does not possess any right of action against defendant under the Ordinance of December 2, 1916.

3. The City of Philadelphia does not possess the authority to charge defendant with water rent for the years 1937 and 1938.

*Finding of the court*

The court finds for defendant against the City of Philadelphia.