329 A.2d 224

**Nate GOODMAN and Voss & Goodman, Inc., doing business as Paul Bunyan, Appellants,**

v.

**R. Gordon KENNEDY, District Attorney of the County of Erie, Pennsylvania, et al.**

Supreme Court of Pennsylvania.

Argued April 30, 1973.

Decided Oct. 30, 1974.

Rehearing Denied Dec. 27, 1974.

314

John M. McLaughlin, Knox, Graham, Pearson, Mc-Laughlin & Sennett, Inc., Erie, for appellants.

Daniel W. Cooper, Pittsburgh, Charles D. Agresti, Asst. Dist. Atty., Lawrence L. Kinter, Erie, for appellees.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

MANDERINO, Justice.

The appellants, Nate Goodman and Voss & Goodman, Inc., filed a complaint in equity seeking to enjoin the en-

forcement of the criminal statute proscribing the Sunday sales of fresh meats, produce and groceries. Act of June 24, 1939, P.L. 872, § 699.15, as amended, 18 P.S. § 4699.-15 (recodified as 18 Pa. S. § 7364). Following a hearing, relief was denied and this appeal followed.

The appellant, Nate Goodman, is the sole owner of all of the stock of the corporate appellant, Voss & Goodman, Inc., which operates a grocery store in Erie, Pennsylvania, under the name of Paul Bunyan. The Paul Bunyan store, which has always employed ten or more persons, carries a standard line of grocery store items. In addition, the store has a delicatessen department which sells prepared foods such as salads, sandwiches, baked beans, chicken and spareribs. In 1972, the Paul Bunyan store and twenty-eight other stores in Erie County were subjected to arrests for Sunday sales.

The present action was filed on December 6, 1972, in an attempt to gain relief from multiple arrests. Since the filing of the action, the Act challenged has been repealed and reenacted. 18 Pa. S. § 7364. The appellants' cause of action, however, is not rendered moot by the reenactment. Since the wording of the new act is identical to the old Act, with one change which we shall later discuss, the appellants' challenge is properly before us. The Statutory Construction Act of 1972, 1 Pa. S. § 1962, states "[w]henever a statute is repealed and its provisions are at the same time reenacted in the same or substantially the same terms by the repealing statute, the earlier statute shall be construed as continued in active operation. All rights and liabilities incurred under such earlier statute are preserved and may be enforced."

The new grocery act, with certain exceptions, prohibits any person from engaging in the business of selling or otherwise dealing at retail in fresh meats, produce and groceries on Sunday. 18 Pa. S. § 7364. There are three

exceptions in the law. The law states that the prohibition does not apply to any retail establishment:

(1) employing less than ten persons;

(2) where fresh meats, produce and groceries are offered so [sic] sold by the proprietor or members of his immediate family; or

(3) where food is prepared on the premises for human consumption.

(The word *or* appeared between the word *offered* and the word *sold* in the repealed statute. The word *so* in the reenacted statute is an obvious misprint.)

In *Bertera's Hopewell Foodland, Inc. v. Masters*, 428 Pa. 20, 236 A.2d 197 (1967), this Court held that the grocery act and the exceptions to the act did not violate either the federal or the state constitutions. Appellants raise no issue concerning the constitutionality of the general prohibition in the act. The issues raised concern the exceptions and the alleged discriminatory enforcement of the act.

I.

The appellants urge that we consider our decision in *Bertera* that the first exception is constitutionally valid. They contend that that exception denies them the equal protection of the laws in violation of their Fourteenth Amendment rights, and constitutes a special law in violation of the Pennsylvania Constitution. *See* Pa. Const. art. 3, § 7, § 32(7), P.S. Both of these arguments were considered and rejected in *Bertera*. We must again reject these arguments.

*Bertera* held that the words "employing less than ten persons" did not mean "employing less than ten persons" on Sunday, but meant "employing less than ten persons" at any time. The Statutory Construction Act of 1972 gives us the following guide in Section 1922:

"In ascertaining the intention of the General Assembly in the enactment of a statute the following presump-

tions, among others, may be used: . . . [t]hat when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed on such language."

1 Pa. S. § 1922.

Since the legislature, after the *Bertera* decision, reenacted the first exception using words identical to those in the act at the time of the *Bertera* decision, we should presume that the legislature intended the first exception to mean what we said it meant in *Bertera*.

The legislative decision to except retail establishments "employing less than ten persons" *at any time* was within the legislature's constitutional discretion. *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961) pointed out that enforcement considerations are relevant in determining the reasonableness of legislative classifications. The test chosen by the legislature avoids some problems of enforcement of a Sunday closing law. The test chosen would permit enforcement officers to periodically obtain information as to the number of employees employed by a given retail establishment, and to maintain a list of those establishments permitted to open under the exception. To determine if the statute was being obeyed, stores open on Sunday could simply be checked against this list. If all retail grocery establishments were permitted to remain open on Sunday so long as no more than nine employees were *working* on any given Sunday, no one could see an open store and know whether the law was being violated. Enforcing the statute would require a weekly check of the interior of every store open on Sunday to determine how many employees were working. The legislature could have concluded that such enforcement considerations dictated that the exception apply only to those stores employing "less than ten" *at any time.*

■ The appellants contend that this division of retail establishments selling the same commodities into two different classifications based solely on the number of employees is arbitrary, and results in economic harm to the appellants. Initially, we note that all statutory classifications permitting one class to be treated differently than another class, involve some measure and type of harm to one of the classes. Such discrimination, however, does not make the classification unconstitutional. The legislature has the constitutional authority to establish different classifications of persons and to provide for different treatment of the classifications under the law so long as the basis for each classification is reasonably related to the evils sought to be prevented. In *McGowan v. Maryland*, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961), the Court stated the equal protection test as follows:

> "Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affects some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have enacted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." (citations omitted).

The test for determining the validity of legislative classifications under provisions of article 3, of the Pennsylvania Constitution, prohibiting special laws, is not significantly different. *Bargain City U.S.A. v. Dilworth.* 407 Pa. 129, 179 A.2d 439 (1962); *see also Chartiers Valley Joint Schools v. County Board of School Directors v. Boehm*, 418 Pa. 520, 211 A.2d 487 (1965).

322

■ The state has a valid interest in providing a day of rest and recreation for members of the public, and general proscriptions against Sunday sales are constitutional. Many exceptions to the general prohibitions have been upheld because of a recognition that the public's enjoyment of the day of rest and recreation can be enhanced by the employment of some on the day set aside for the rest and recreation of others. *Two Guys from Harrison-Allentown, Inc. v. McGinley,* 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961); *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Bertera's Hopewell Foodland, Inc. v. Masters,* 428 Pa. 20, 236 A.2d 197 (1967).

■ The appellants, however, argue that the legislative selection of the number nine has no reasonable basis, any more than the number eight or the number ten or any other number. The use of mathematical limitations as the basis for separate classifications in the law is constitutional so long as the number selected bears a reasonable relationship to a legitimate legislative objective. *Carmichael v. Southern Coal and Coke Company,* 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937), held valid a state statute that imposed upon some employers—but not all—the obligation to pay a certain percentage of their monthly payrolls into the state unemployment compensation fund. The statutory classification excluded from its operation employers of less than eight employees. *Carmichael* said:

"Distinctions in degree, stated in terms of differences in number, have often been the target of attack . . . . It is argued here, and it was ruled by the court below, that there can be no reason for a distinction, for purposes of taxation, between those who have only seven employees and those who have eight. Yet, this is the type of distinction which the law is often called upon to make. It is only a difference in numbers which marks the moment when day ends and

night begins, when the disabilities of infancy terminate and the status of legal competency is assumed. It separates large incomes which are taxed from the smaller ones which are exempt, as it marks here the difference between the proprietors of larger businesses who are taxed and the proprietors of smaller businesses who are not.

"Administrative convenience and expense in the collection or measurement of the tax are alone a sufficient justification for the difference between the treatment of small incomes or small taxpayers and that meted out to others."

*Id.* at 510–11, 57 S.Ct. at 873, 81 L.Ed. at 1253–54.

See also cases cited in *Carmichael,* footnote 2: *Consolidated Coal Co. v. Illinois,* 185 U.S. 203, 207, 22 S.Ct. 616, 46 L.Ed. 872, 875 (coal mines employing five or more subject to inspection); *McLean v. Arkansas,* 211 U.S. 539, 551, 29 S.Ct. 206, 53 L.Ed. 315, 321 (mines employing ten or more required to measure coal for payment of wages before screening); *Booth v. Indiana,* 237 U.S. 391, 397, 35 S.Ct. 617, 59 L.Ed. 1011, 1017 (mines required to supply washhouses upon demand of twenty employees); *Jeffrey Mfg. Co. v. Blagg,* 235 U.S. 571, 576, 35 S.Ct. 167, 59 L.Ed. 364, 368, 7 N.C.C.A. 570; *Middleton v. Texas Power & L. Co.,* 249 U.S. 152, 159, 39 S.Ct. 227, 63 L.Ed. 527, 532 (employers of five or more included within workmen's compensation act).

In *Shankey v. Staisey,* 436 Pa. 65, 257 A.2d 897 (1969), we held that election laws denying positions on the general election ballot to persons failing to obtain a certain minimum of public support were constitutional. The classification was drawn in terms of the number of petition signatures or primary votes that such a candidate had secured. We held the numerical classification valid, because there was a legitimate legislative objective in avoiding an unduly complicated ballot even though the

324

classification discriminated against some persons. Likewise, in *Chartiers Valley Joint School v. County Board of School Directors v. Boehm,* 418 Pa. 520, 211 A.2d 487 (1965), we upheld a numerical classification, in the school code, which treated school districts having more than 4,000 pupils differently than school districts having less than 4,000 pupils.

Many other existing laws classify according to a legislatively selected number. A legislatively selected number of dollars divides those who may sue in a particular court from those who may not, a legislatively selected number of years divides those who may successfully be sued on a contract from those who may not; a legislatively selected number of days divides those who may have redress in the courts from those who may not.

In the grocery act, the legislatively selected number of "less than ten" reasonably relates to legitimate legislative objectives. The legislature may establish provisions permitting some people to be employed so that others may enjoy their day of rest and recreation. It chose to achieve this objective by providing that retail establishments employing less than ten persons may remain open. We have no basis upon which to conclude that its choice was unreasonable. Had the legislature chosen a number such as ten thousand, there might be a basis for concluding that the number had no reasonable relationship to the legislative objective. Such a number might completely thwart the legitimate legislative objective of providing a day of rest and recreation. On the other hand, we could hardly invalidate an exception which would allow a retail establishment employing only one employee to remain open. The Maryland Sunday closing law, considered in *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), contained such an exception, and it was not declared unconstitutional. *McGowan* pointed out that each of the many exceptions had to be upheld if any state of facts could justify the exception.

Obviously, somewhere between the number one and the number ten thousand, the line of constitutional validity might be crossed, but we cannot say the line was crossed when the legislature selected "less than ten."

■ The legislature is to be given wide discretion in classifying, and any judicial inquiry into legislative classifications should not concern itself with the wisdom of the legislative choices so long as the choices are reasonably related to legitimate legislative objectives. *Levy v. Louisiana,* 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Safeway Stores v. Oklahoma Retail Groc. Assoc.,* 360 U.S. 334, 79 S.Ct. 1196, 3 L.Ed.2d 1280 (1959); *Chartiers Valley Joint School v. County Board of School Directors v. Boehm,* 418 Pa. 520, 211 A.2d 487 (1965); *Bargain City U.S.A. v. Dilworth,* 407 Pa. 129, 179 A.2d 439 (1962).

■ A legislative classification need not be made with "mathematical nicety." Inequalities may result as long as some reasonable basis is apparent for the classification. *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 35 L.Ed.2d 491 (1970); *Equitable Credit & Discount Co. v. Geier,* 342 Pa. 445, 31 A.2d 53 (1941).

■ We are, therefore, unable to conclude that the legislature's choice of "less than ten" employees as the dividing line between the classifications for purposes of prohibiting Sunday sales violates either article 3 of the Pennsylvania Constitution or the fourteenth amendment. We thus reaffirm our *Bertera* decision as to the first exception.

## II.

The next issue concerns the second exception. It permits retail establishments to remain open "where fresh meats, produce and groceries are offered [or] sold by the

proprietor or members of his immediate family." 18 Pa. S. § 7364(c)(2). At the time *Bertera's Hopewell Foodland, Inc. v. Masters*, 428 Pa. 20, 37, 236 A.2d 197, 206 (1967), was decided, this exception contained additional language which *Bertera* interpreted to mean that any retail establishment could remain open "where fresh meats, produce and groceries are offered or sold by the proprietor or members of his immediate family *and employing less than ten persons.*" (Emphasis added.) *See* Act of June 24, 1939, P.L. 872, § 699.15, as amended, 18 P.S. § 4699.15. In the reenactment of the second exception, the legislature deleted the italicized language. The reasoning of *Bertera* as to this exception is therefore not controlling. This was the only change made when the grocery act was repealed and reenacted.

The second exception now classifies retail establishments into those where the commodities are offered or sold by persons *who are members of the same family* and those where like commodities are offered or sold by persons *who are not members of the same family*. The former are allowed to open on Sunday but the latter are not. The separate classifications are based solely on the *family status* of those offering or selling the commodities. The exception thus gives an economic advantage to certain groups solely because of the degree of consanguinity. Groups similarly situated, except for the degree of consanguinity, thereby suffer economic harm.

 *Bertera* did not specifically consider whether a classification based solely on *family status* was reasonably related to the legitimate legislative objective to be attained by the Sunday closing laws. *Bertera* assumed that economic discrimination in favor of stores classified solely on the basis of family status, in and of itself, was a legitimate legislative objective. We cannot agree. Economic discrimination, in and of itself, is not a legitimate legislative objective which justifies the closing of some stores on Sunday and not others. Economic dis-

crimination can be tolerated constitutionally only when it is incidental to some other legitimate legislative objective. A classification based on family status might be reasonably related to a legitimate legislative objective in other contexts, even though economic discrimination incidentally results, but we are unable to perceive any reasonable relationship in the present context. Without such relationship, the family status classification violates the equal protection clause of the fourteenth amendment, *Morey v. Doud,* 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957); *Smith v. Cahoon,* 283 U.S. 553, 51 S.Ct. 582, 75 L.Ed. 1264 (1931); *Commonwealth v. Daniel,* 430 Pa. 642, 243 A.2d 400 (1968), and violates article 3 of the Pennsylvania Constitution which prohibits special laws. *Kurtz v. City of Pittsburgh,* 346 Pa. 362, 31 A.2d 257 (1943); *Commonwealth v. Casey,* 231 Pa. 170, 80 A. 78 (1911). To the extent that *Bertera* is inconsistent with this opinion, it is overruled.

## III.

The appellants next contend that the trial court erred in holding that the appellants' entire retail establishment could not remain open on Sunday under the third exception. That exception allows the Sunday opening of a retail establishment "where food is prepared on the premises for human consumption." 18 Pa. S. § 7364(c)(3). The trial court found that the Paul Bunyan store, which occupied eight thousand square feet, used five hundred square feet for the preparation of food for human consumption within the meaning of the third exception in the grocery act. The trial court held, therefore, that the appellants could open that portion of the premises devoted to the preparation of food for human consumption. The trial court, however, denied the appellants the right to open the remaining portion of the store which was not used for the preparation of food for human consumption. The appellants argue that the entire retail establishment

may remain open even though only five hundred square feet is used for a purpose qualifying for the third exception. We cannot agree.

The interpretation urged by the appellants would mean that a retail establishment employing *any number* of employees would be permitted to open on Sunday if *any portion* of the premises qualified for the third exception. Under the Statutory Construction Act, in ascertaining legislative intent, we are to consider the object to be attained by a statute. 1 Pa. S. § 1921(c)(4). We are also to consider the consequences of a particular interpretation. 1 Pa. S. § 1921(c)(6). We must presume that the General Assembly does not intend a result that is absurd or unreasonable. 1 Pa. S. § 1922(1). The consequences of the interpretation suggested by the appellants would render ineffective the general prohibition against the Sunday sales of fresh meats, produce and groceries. The legislative objective of providing for a day of rest and recreation would be thwarted. We are thus unable to accept appellants' interpretation. The trial court properly held that the appellants' entire retail establishment could not remain open under the third exception.

## IV.

The appellants' final claim is that the trial court erred in concluding that the grocery act had not been discriminatorily applied against them. Although the record establishes that there was a lack of uniformity in the enforcement of the Sunday closing law, there is no evidence in the record to establish that the lack of uniformity was the result of purposeful discrimination aimed at a particular class of which the appellants were members. A purposeful discrimination must be shown and we cannot presume such discrimination. *Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1943);

*Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 221 (1885).

## V.

The only remaining question is whether the unconstitutional second exception in the grocery act is severable from the remaining portions of the act. The Statutory Construction Act of 1972, 1 Pa. S. § 1925, provides:

"The provisions of every statute shall be severable . . . unless the court finds that the valid provisions of the statutes are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent."

■■■ Under the guidelines provided, we conclude that the unconstitutional second exception is severable. The constitutional provisions of the grocery act are not "essentially and inseparably connected with, and . . . dependent upon," the unconstitutional second exception. We cannot presume that the General Assembly would not have enacted the constitutional portions of the act without the unconstitutional second exception. The constitutional portions of the act are complete and capable of execution in accordance with the legislative intent.

Since the appellants' entire store may not open on Sunday under either the first or third exceptions, they remain subject to the general prohibition against the Sunday sale of fresh meats, produce and groceries, and are not entitled to injunctive relief.

Part I of this opinion expresses the views of EAGEN, POMEROY, NIX and MANDERINO, JJ.

Part II of this opinion expresses the views of JONES, C. J., and EAGEN, ROBERTS and MANDERINO, JJ.

Parts III and IV express the views of all members of the Court except O'BRIEN, J.

Decree affirmed. Each party to pay own costs.

ROBERTS, J., files a concurring opinion in which JONES, C. J., joins.

NIX, J., files a concurring and dissenting opinion in which POMEROY, J., joins.

O'BRIEN, J., files a dissenting opinion.

ROBERTS, Justice (concurring).

I dissent from the majority's refusal to invalidate the Sunday Trading Law's exemption of stores employing less than ten persons.[1] I agree that the exemption for family-operated businesses is unconstitutional.[2] Because, in my view, both invalid exceptions are severable,[3] I would affirm the decree of the chancellor.[4]

What is the justification for exempting small stores from the Sunday Trading Law? The majority, while devoting much attention to the propriety of drawing the line at a particular size (less than ten employees) fails to properly consider the relationship to the purposes of *this*

1. Although the Court was faced with this issue in *Bertera's Hopewell Foodland, Inc. v. Masters,* 428 Pa. 20, 236 A.2d 197 (1967), that case is not controlling because there was no opinion of the court. Justice Musmanno filed an opinion announcing the result. Chief Justice Bell and Mr. Justice Roberts wrote concurring opinions. Mr. Justice (now Chief Justice) Jones and Mr. Justice Eagen concurred in the result. Mr. Justice O'Brien filed a dissenting opinion. Mr. Justice Cohen filed a separate opinion.

2. Consequently, I join in Part II of the Opinion of the Court.

3. *Bertera's Hopewell Foodland, Inc. v. Masters,* 428 Pa. 20, 55, 236 A.2d 197, 210 (1967); see *State Board of Chiropractic Examiners v. Life Fellowship,* 441 Pa. 293, 298–300, 272 A.2d 478, 481 (1971).

4. Because appellant only challenges the validity of the statutory exemptions, none of the opinions in this case are to be read as expressing any view on the constitutionality vel non of the Sunday Trading Laws.

law of discrimination based solely on number of employees. I adhere to the view, expressed in my concurring opinion in *Bertera's Hopewell Foodland, Inc. v. Masters,* 428 Pa. 20, 55, 236 A.2d 197, 215 (1967), that there is no rational relationship between the arbitrary economic distinction created by the exception and the purposes of the Sunday Trading Law.

As noted in that opinion:

"It is one thing to say, as the Supreme Court in *Two Guys* did say, that it is 'within the power of the legislature to have concluded that these businesses [discount department stores] were particularly disrupting the intended atmosphere of the day because of the great volume of motor traffic attracted, the danger of their competitors also opening on Sunday and their large number of employees.' 366 U.S. at 591, 81 S.Ct. 1140. But it is quite another thing to use this rationale as a lever to give a competitive boost to smaller establishments. For the Legislature to decide that supermarkets, as well as discount stores, disrupt the desired Sunday atmosphere is to legislate within the rationale of *Two Guys.* Yet, when the statute exempts the corner grocery store from its prohibition, we inject the element of economic discrimination into our Sunday closing law, and thus create an entirely different situation from that faced by the Supreme Court in *Two Guys.*"

428 Pa. at 55–56, 236 A.2d at 216.

Indeed, the majority today agrees that, "[e]conomic discrimination, in and of itself, is not a legitimate legislative objective. Economic discrimination can be tolerated constitutionally only when it is incidental to some other legitimate legislative objective."

Ante, at 213.

Despite this recognition, the majority fails to demonstrate the relation of the exemption for small stores to

any other legislative objective. If the purpose of the Sunday Trading Laws is to curtail traffic and noise, see *Two Guys from Harrison-Allentown, Inc. v. McGinley*, 366 U.S. 582, 591, 81 S.Ct. 1135, 1140, 6 L.Ed.2d 551 (1961), then the exclusion permitting only small retail stores to operate on Sunday has no relevance to this objective. It is not the number of workers employed at a store or their family relationship that determines whether a shopper will give up his Sunday rest. Rather, the needs of the shopper and his expectation of finding products he desires shape his decision. Although the anticipation that the items sought can be purchased may be affected by the number of stores open on Sunday, it is unaffected by the number of employees working at the store or their family ties to one another. Clearly, the considerations which require us to strike down the family store exemption dictate that the small store exemption is also impermissible. The Commonwealth is not free to prevent some businesses, chosen by an arbitrarily discriminatory formula, from operating while permitting others to remain open.

The exemption cannot be justified as legitimate legislative line-drawing. Because the classification of stores solely according to the number of employees is manifestly irrational, the location of the line is irrelevant.

Here the Legislature chose to differentiate solely on a ground unrelated to its objective. And a statutory discrimination that has no rational basis plainly cannot withstand an equal protection challenge. Hence, the exceptions are constitutionally impermissible.

JONES, C. J., joins in this concurring opinion.

NIX, Justice (concurring and dissenting).

I cannot accept the reasoning of the majority that results in the approval of an exemption for stores employing less than ten persons and rejecting a classification based upon family affiliation. If the justification for

the exemption approved by the majority (less than ten employees) is that small retail stores are significantly less offensive to the purposes sought to be achieved by the Sunday Trading Laws,[1] the limitation of a family-operated business is as effective (if not more so) than the arbitrary selection of the number nine.

I subscribe to the views expressed by the late Justice Musmanno in *Bertera's Hopewell Foodland, Inc. v. Masters*, 428 Pa. 20, 236 A.2d 197 (1967), that:

"Exception No. 2 is a humanitarian one. There are many small family-owned grocery stores from which a family derives its livelihood. It would be unjust to shut down this type of a store, while allowing the operation of marts which employ 9 persons. Since members of an immediate family do not, except in rare instances, go into an excessively numerous figure, there is no danger that a corner grocery store could swell into a mammoth supermarket manned by polygamists boasting hundreds of children." Id. at 35, 236 A.2d at 205.

Accordingly, while I concur in Parts I, III and IV of the opinion of Mr. Justice Manderino, I must dissent from Part II. In view of my belief that the second exception is also valid, I have not considered the problem discussed in the opinion for the Court under Part V.

POMEROY, J., joins in this concurring and dissenting opinion.

O'BRIEN, Justice (dissenting).

I must respectfully dissent for the reasons I previously stated in *Bertera's Hopewell Foodland, Inc. v. Masters*, 428 Pa. 20, 236 A.2d 197 (1967).

1. Act of June 24, 1939, P.L. 872, § 699.15 as amended 18 P.S. § 4699.15, recodified 18 P.S. § 7364. The question of the constitutionality of "Blue Laws" in general is not presented in this appeal. Appellant has limited his challenge to the validity of the statutory exemptions and my views have been confined to the narrow issue presented.