366 A.2d 254

The KROGER CO., a corporation, and the
Great Atlantic & Pacific Tea Company,
Inc., a corporation, Appellants,

v.

O'HARA TOWNSHIP et al., political sub-
divisions, Appellees.

Superior Court of Pennsylvania.

Nov. 16, 1976.

Paul A. Manion, Gerald C. Paris, Reed, Smith, Shaw & McClay, Pittsburgh, for appellants.

William W. Milnes, Brandt, McManus, Brandt & Malone, Philip Huss, Jr., James W. Dunn, Jr., Pittsburgh, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

WATKINS, President Judge.

This is an appeal from a final decree in equity by the Court of Common Pleas of Allegheny County dismissing the plaintiffs-appellants' complaint seeking an injunction to prohibit the appellee townships from enforcing the Act of December 6, 1972, P.L. 1482, No. 334, effective June 6, 1973, 18 Pa.C.S.A. § 7364, hereinafter referred to as "Sunday Trading Laws".

18 Pa.C.S.A. § 7364 provides that a person who engages in the business of selling or dealing in retail in fresh meats, produce and groceries on a Sunday is guilty of a summary offense. The appellant stores claim that the act is being enforced against them in an unconstitutionally discriminatory manner. The appellants are corporations which operate supermarkets in the townships in question. The appellants were prosecuted in McCandless Township for being open for business on Sundays in September of 1974. They were also prosecuted under the same act in O'Hara Township and although not prosecuted in Ross Township, the appellants were warned of the intent of the Township to enforce the act and because of the warning have not opened since that time.

Appellants argue that in all three townships the act has been enforced against them in a discriminatory manner because other retail stores have remained open on Sundays and have not been prosecuted. Appellants also ask this court to declare the Sunday Trading Laws unconstitutional as a violation of the equal protection and

due process clauses of the Fourteenth Amendment to the Constitution of the United States.

In *Two Guys from Harrison-Allentown, Inc. v. McGinley,* 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961), the United States Supreme Court upheld this state's right to pass and enforce so-called "Sunday Trading Laws". Therefore, it is well established that such laws are constitutional. See *Bertera's Hopewell Foodland, Inc. v. Masters,* 428 Pa. 20, 236 A.2d 197 (1967), appeal dismissed 390 U.S. 597, 88 S.Ct. 1261, 20 L.Ed.2d 158, where a full discussion of the constitutionality of the Sunday Trading Laws is set forth in the majority opinion by the late Mr. Justice Musmanno. We cannot accept the contention that the act violates constitutional safeguards.

Appellants' second contention to the effect that the act has been enforced against the appellants in an impermissible discriminatory manner is also without merit.

In order to establish an allegation of discriminatory enforcement it is necessary to prove that such enforcement contains an element of intentional or purposeful discrimination. *Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1943). Proof of mere laxity of enforcement by the authorities is not sufficient to establish an impermissible exercise of discrimination in the enforcement of the law. *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962).

Common sense dictates that if proof of non-enforcement against others was a valid defense for the violation of criminal statutes then each and every criminal proceeding would be bogged down in a plethora of defense evidence citing others who escaped prosecution under a particular criminal statute. Therefore, in order to establish their claim, the appellants are required to prove

an intentional exercise of discrimination in enforcement by the township authorities and not merely that they were prosecuted while others escaped the wrath of the law.

As the concurring and dissenting opinion of Judge Spaeth points out, in the case of O'Hara Township, prosecutions were brought against both supermarkets for Sunday Trading Law violations. However, one prosecution was brought against one of the other two retail establishments operating on Sunday and the other was threatened with prosecution. It is obvious from these facts that no pattern of discriminatory enforcement was established in the case of O'Hara Township.

In the case of McCandless Township the appellant and other supermarkets were prosecuted. However, the township police and the township solicitor threatened eleven other retail stores with prosecution. Thus the appellants again failed to establish any pattern of discriminatory enforcement.

In the case of Ross Township the record shows that no one was prosecuted under the Sunday Trading Act. However, all eight of the supermarkets doing business on Sundays were threatened with prosecution while approximately thirty-five other retail businesses operating on various Sundays were not so threatened. From these facts alone the appellants contend that Ross Township is guilty of discriminatory enforcement of the act. Such a conclusion would be premature indeed as the prosecutions may never take place and there is no proof that the retail stores may not be warned and prosecuted. Also, it was not established how many, if any, of the other retail businesses might be excluded from the Sunday Trading Laws by the various exemptions contained in the act nor whether any selectivity in enforcement was unjustified.

18 Pa.C.S.A. § 7364(c) provides for exemptions for retail establishments:

(1) [that] employing less than ten persons;

(2) where fresh meat, produce and groceries are sold by the proprietor or members of his immediate family; or

(3) where food is prepared on the premises for human consumption.

These exceptions have withstood attacks as to their constitutionality. *Bertera's Hopewell Foodland, Inc. v. Masters, supra.* Thus in order to establish their case appellants would have to prove that the other retail stores did not fall into any of the classes of exceptions. The appellants also failed to prove that a conscious policy of enforcement was not justified in this case since such a policy does not violate constitutional standards unless it is based on an arbitrary and unlawful standard. See *Oyler v. Boles, supra.*

■ ■ The concurring and dissenting opinion in this case recognizes this problem but in effect shifts the burden of justifying such a policy to the appellees. This we feel is incorrect because it is the appellants who brought this action and the burden of proving unjustifiable enforcement should remain with the ones who alleged it. Given the wide latitude traditionally given to prosecutors, 12 *P.L.E.* 198, we are loath to enjoin the enforcement of a criminal statute upon the mere showing that certain businesses have been threatened with prosecution while others were not. It remains the appellants' burden to demonstrate that their businesses are no more disruptive of the legislative policy behind the Sunday Trading Laws, i. e., providing one day of peace and tranquility a week, than are the ones that were not threatened by prosecution. Therefore the question of whether the act was enforced in an impermissible manner in Ross Township cannot be answered in the absence of proof that any

selectivity in enforcement was not justified. To hold otherwise would be to engage in mere speculation as to the justifiability of the actions of the authorities in this case based only on numbers and this we refuse to do.

Decree affirmed.

SPAETH, J., files a concurring and dissenting opinion in which HOFFMAN and CERCONE, JJ., join.

SPAETH, Judge (concurring and dissenting).

I join in the court's affirmance of the lower court's order dismissing the complaint against appellees Mc-Candless and O'Hara Townships, because as to those townships appellants did not meet the burden of proof imposed on one who alleges discriminatory enforcement of the Sunday Trading Laws (popularly known as the "Blue Laws"). I would, however, reverse the order dismissing the complaint against appellee Ross Township, because I believe that as to that township appellants did meet this burden of proof.

Appellants operate supermarkets in the three appellee townships. During September, 1974, appellant Kroger's supermarket and other supermarkets were open for business in McCandless Township on Sunday. They were cited and each fined $100 for violation of the Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, eff. June 6, 1973, 18 Pa.C.S. § 7364, which provides:

> *(a) Offense defined.*—A person is guilty of a summary offense if he engages in the business of selling or otherwise dealing at retail in fresh meats, produce and groceries on Sunday.

In O'Hara Township, appellant Kroger and the owner of another supermarket were similarly prosecuted under section 7364 and also under section 7363, which proscribes sales on Sunday of an enumerated list of "certain personal property." The Crimes Code, *supra,* 18 Pa.C.S.

§ 7363. In Ross Township, eight supermarkets, including appellants', were warned that the Township intended to enforce section 7364; because of this warning, appellants have not opened for business in Ross Township on Sunday.

On November 4, 1974, appellants filed a complaint in equity seeking to enjoin appellees from discriminatorily prosecuting them.[1] Discriminatory enforcement was shown, appellants alleged, by a pattern of enforcing the Sunday Trading Laws only against supermarkets while

---

1. Appellants also alleged, in Count II of their Amended Complaint, that sections 7361, 7363, and 7364 should be declared unconstitutional as violative of the Equal Protection and Due Process provisions of the Federal and State Constitutions. Their allegations are, in my view, sufficiently similar to those in *Two Guys from Harrison-Allentown, Inc. v. McGinley*, 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961), to render that case controlling and thus to render appellants' claims without substantial merit. I note, however, that there have been changes in our statute since the United States Supreme Court faced the question. For example: antiques may now be sold, as an exception to the general ban on sales of personal property, 18 Pa.C.S. § 7363(c); sales of newspapers, service by a public utility, and performances of drama and civic light opera in cities of the second class are now permitted, 18 Pa.C.S. § 7361(b)(2), (4) and (7); and three specified kinds of stores may sell fresh meats, produce and groceries, 18 Pa.C.S. § 7364(c)(1)–(3). The addition of these exceptions might persuade our Supreme Court (as the New York Court of Appeals was recently persuaded—*see People v. Abrahams*, 40 N.Y.2d 277, 386 N.Y.S.2d 661, 353 N.E.2d 574, State of New York, Court of Appeals [decided June 17, 1976]) that the statute is now an indefensible "crazyquilt" of exceptions that have no rational relation to the legislature's purpose. I surmise however, that our Supreme Court would not be so persuaded. The Court has held, albeit not without considerable difference of opinion, that two of the three exemptions under § 7364 are constitutionally valid. *Goodman v. Kennedy*, 459 Pa. 313, 329 A.2d 224 (1974); *Bertera's Hopewell Foodland, Inc. v. Masters*, 428 Pa. 20, 236 A.2d 197 (1967). These decisions suggest, to me, that our Supreme Court is more kindly disposed toward accretions of exceptions than was the New York Court of Appeals. It may be that I am wrong, or that the Court will change its mind—perhaps even in this case, if allocatur should be sought and granted. However, unless such a change of mind occurs, I believe the Court's decisions, along with the United States Supreme Court's in *Two Guys, supra*, preclude this court from accepting appellants' contention.

not enforcing them against other retail stores. After a brief preliminary injunction hearing, the parties agreed that all further evidence could be by way of stipulations and depositions, which were subsequently filed. The parties then stipulated: that no further pleadings, hearings or other proceedings would be required; that in making its adjudication the lower court might consider an enumerated list of items "with the same force and effect as if they had been introduced into evidence at a hearing"; that "the court may make its adjudication without any further hearing; [and] that the adjudication shall constitute the final decree or judgment of the Court . . . ." The court found no evidence of discriminatory enforcement and accordingly dissolved the preliminary injunction and dismissed the complaint. This appeal followed.

Since 1961, when the Supreme Court upheld the constitutionality of the Sunday Trading Laws, *Two Guys from Harrison-Allentown, Inc. v. McGinley, supra* note 1, most attacks on the Laws, and on similar laws in other states, have been by way of the doctrine of discriminatory enforcement, first enunciated in *Yick Wo v. Hopkins,* 118 U.S. 356, at 373-74, 6 S.Ct. 1064, at 1073, 30 L.Ed. 220.

Though the law itself be fair on its face and impartial in appearance, yet if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, the denial of equal justice is still within the prohibition of the constitution.

To make out a claim of discriminatory enforcement requires more than proof of mere non-enforcement against others, *Moss v. Hornig,* 314 F.2d 89, 92 (2d Cir. 1963), mere laxity of enforcement, *State v. Hicks,* 213 Or. 619, 637, 325 P.2d 794, 802 (1958), *cert. denied,* 359 U.S. 917,

79 S.Ct. 594, 3 L.Ed.2d 579 (1959), or the "conscious exercise of some selectivity in enforcement," *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446, 506 (1962). The enforcement must be shown to contain an "element of intentional or purposeful discrimination," *Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1943).

The opinion of the lower court implies that direct evidence of intentional discrimination is required. If indeed that was the lower court's view, I disagree with it. Inferential proof may also reveal intentional discrimination. This conclusion is cogently argued, by analogy to Supreme Court decisions on discriminatory jury selection, in Comment, 61 *Colum.L.Rev.* 1103, 1123–1131 (1961). There it is said that intentional discrimination is shown if the "disparity between the ratios of violations by and enforcement against members of the [allegedly favored and disfavored] classes [is] too great to permit any other inference than that intentional discrimination was involved." 61 *Colum.L.Rev.* 1103, 1129 (1961).[2]

Appellants attempted to prove intentional discrimination by inference. It is necessary, therefore, to see what disparities they proved between the ratios of violations by and enforcement against disfavored class members (supermarkets) and favored class members (other retail stores).

---

2. Inferential proof has been used in cases involving discriminatory enforcement, though usually without discussion of its validity. *See Taylor v. City of Pine Bluff,* 226 Ark. 309, 289 S.W.2d 679 (1956), *cert. denied,* 352 U.S. 894, 77 S.Ct. 125, 1 L.Ed.2d 85 (1956) (inferential proof accepted but enforcement pattern found based on reasonable rationale); *Boynton v. W. Coast Theatres Corp.,* 60 F.2d 851 (10th Cir. 1932) (inferential proof accepted but found insufficient); *City of Corington v. Gausepohl,* 250 Ky. 323, 62 S.W.2d 1040 (1933) (inferential proof accepted and found to show discriminatory enforcement).

Appellants and appellees stipulated to the following facts:

### O'HARA TOWNSHIP

| Violations | | Prosecutions | |
|---|---|---|---|
| Favored-class: | 2 | Favored-class: | 1; 1 threatened. |
| Disfavored-class: | 2 | Disfavored-class: | 2 |

### McCANDLESS TOWNSHIP

| Violations | | Prosecutions | |
|---|---|---|---|
| Favored-class: | "Numerous" prior to 11/4/74 date complaint filed in this case); 15 on 11/10/74. | Favored-class: | None; 11 threatened. |
| Disfavored-class: | Kroger and "other supermarkets." | Disfavored-class: | Kroger and "other supermarkets." |

———◆———

In O'Hara Township, one of the two favored-class violators was prosecuted on November 17, 1974. This fact, along with the extremely small numbers involved, makes it impossible to find discriminatory enforcement in that Township.

As to McCandless Township, the evidence is simply too vague to support a finding of discriminatory enforcement. True, there were fifteen favored-class violations, none of which was prosecuted. There is, however, evidence of good-faith efforts by the Township to proceed against some of these violators. On November 10, 1974, Township police notified three convenience stores that any future sales in violation of the Sunday Trading Laws would be prosecuted. On November 27, 1974, the Township Solicitor notified eight other stores of the pendency of this suit and sent each a copy of section 7363. These actions are sufficient, in my view, to warrant denial of an injunction against future discriminatory enforcement.

As to Ross Township, however, the evidence is sufficient. Appellants and appellees stipulated to the following facts:

| Violations | | Prosecutions | |
| --- | --- | --- | --- |
| Favored-class: | "Numerous" prior to 11/4/74 (date complaint filed in this case); 30 on 11/10/74; 5 others listed by police "from memory and past observation." [3] | Favored-class: | None. |
| Disfavored-class: | 8 | Disfavored-class: | 8 threatened. |

———◆———

Setting aside the vague reference to "numerous" violations, this evidence shows a ratio of thirty-five favored-class violations to eight disfavored-class violations, and a ratio of no favored-class prosecutions threatened to eight disfavored-class prosecutions threatened. In my view intentional discrimination may be inferred from such disparities.[4]

Before an injunction may issue, however, another question must be addressed. Even a conscious policy of selective enforcement does not rise to the level of consti-

---

**3.** The police listed sixteen violators, but of these eleven overlapped with the thirty listed for November 10, 1974.

**4.** The majority asserts that a finding of discriminatory enforcement would be premature because appellants were only threatened with prosecution, and because "there is no proof that the retail stores may not be warned and prosecuted." In the cases of O'Hara and McCandless Townships, prosecutions threatened against stores other than supermarkets persuaded both the majority and me that those Townships were intending to enforce nondiscriminatorily; I do not see why threatened prosecutions are any less probative in the case of Ross Township. Furthermore, I do not think appellants need open on Sunday and incur fines in order to obtain an injunction. The Township's warnings were clear. The continuing financial loss suffered by appellants by not opening, while other retailers carry on their trade, is precisely the kind of harm injunctions in equity are meant to correct. *See Penn Iron Co., Ltd. v. City of Lancaster*, 25 Pa.Super. 478 (1904). Finally, contrary to the majority's assertion, there is proof that Ross Township does not intend to warn and prosecute other retail stores. *See* footnote 9 *infra* and accompanying text.

tutional violation, unless it is shown that "the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles, supra* 368 U.S. at 456, 82 S.Ct. at 506. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).[5] Can there be, therefore, any reasonable justification for Ross Township's failure to enforce sections 7361 and 7363 against the following thirty-five stores?

| | |
|---|---|
| Drugstores | (7) |
| Convenience (food and dairy) | (14) |
| Rental | (2) |
| Garden supplies | ·(3) |
| Auto parts | (1) |
| Hardware | (1) |
| Candies | (1) |
| Pottery | (1) |
| Pool tables and supplies | (1) |
| Bakery | (1) |
| Miscellaneous and unclassifiable | (3).[6] |

5. The discrimination alleged in the present case is administrative, not statutory. It must, however, be remembered that discriminatory enforcement is unconstitutional only because the unequal administration of an otherwise constitutional law renders that law, practically speaking, unconstitutionally discriminatory. *Yick Wo, supra,* 118 U.S. at 373–74, 6 S.Ct. 1064. It follows that the language quoted from *McGowan* applies with equal force to administrative discrimination.

6. That the candy and bakery stores are probably excepted under section 7364(c)(3) (retail establishments where food is prepared on the premises for human consumption) does not significantly change the numbers involved here. The majority opinion suggests that other stores on this list might be excepted under section 7364(c)(1) (stores employing fewer than ten persons) and (c)(2) (stores where sales are by proprietor or members of his immediate family). To this there are three answers. First, the majority does not note that this section applies only to sales of fresh meat, produce and groceries and therefore could except at most only the fourteen convenience stores, leaving nineteen stores on the list. Second, the majority does not mention that the (c)(2) exception is no longer available, having been held unconstitutional in *Goodman v. Kennedy,* 459 Pa. 313, 329 A.2d 224 (1974), overruling to that extent the case cited by the majority,

I can conceive no reasonable rationale for prosecuting supermarkets while allowing these other stores to ply their trades. The Sunday Trading Laws are meant to ensure a day of rest and relaxation for the community. *Specht v. Commonwealth*, 8 Pa. 312, 323, 49 Am.Dec. 518, 521 (1848); *Commonwealth v. Bauder*, 14 Pa.D. & C.2d 571, 576–77 (Lehigh County 1958), *aff'd on opinion of lower court*, 188 Pa.Super. 424, 145 A.2d 915 (1958). There has been no suggestion here that the operation of eight supermarkets would disturb rest and relaxation while the operation of thirty-five other stores would not.[7] The majority says that "[i]t remains the appellants' burden to demonstrate that their businesses are no more disruptive of the legislative policy behind the Sunday Trading Laws, i. e., providing one day of peace and tranquility a week, than are the ones that were not threatened by prosecution." I disagree. The Supreme Court recently reiterated the principle that once a *prima facie* case of discriminatory purpose is made out, even if only by inferential proof, the burden of proof shifts to the State to

*Bertera's Hopewell Foodland, Inc. v. Masters*, 428 Pa. 20, 236 A. 2d 197 (1967). Third and most important, I do not think it was appellants' burden to prove these defenses unavailable to Ross Township. The Township was best able to present its reasons for nonprosecution of the thirty-five stores; if section 7364(c) exceptions were among those reasons, the Township should have so proved.

7. It might be suggested that the traffic and general bustle generated by the supermarkets would be significantly greater than that generated by the other stores. I am not convinced that that would be a reasonable ground for proceeding against one class and not against another. On a first reading *Two Guys, supra* note 1, 366 U.S. at 590–92, 81 S.Ct. 1135, suggests that it would. There, however, the question was whether different fines, levied by statute according to the kind of business done, were constitutionally defensible. The Court held that the legislature was justified in setting higher penalties for businesses that it had concluded "were particularly disrupting the intended atmosphere of the day because of the great volume of motor traffic attracted, the danger of their competitors also opening on Sunday and their large number of employees." *Two Guys, supra*, note 1, at 591, 81 S.Ct. at 1140 (footnotes omitted). In my view this holding as to varying penalties cannot be used to support Ross Township's decision to prosecute only supermarkets.

rebut the presumption of unconstitutional action. *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).[8]

I do not mean that in order to prosecute appellants the Township must prosecute all other offenders. The principles of prosecutorial discretion and selective enforcement grant considerable latitude to the Township administrators and police in their decisions on enforcement. However, the pattern—100% threatened prosecution of supermarkets *versus* 0% prosecution of other violators —is too one-sided to be defended on those grounds.

Furthermore, in addition to this inferential proof there was direct proof in the deposition of Donald Williams, Ross Township Manager, that the Township does not intend to prosecute any of the sixteen stores listed on the police report, "unless the board [of commissioners] takes further action." This is in marked contrast to the evidence of enforcement efforts in McCandless and O'Hara Townships, see, 243 Pa.Super. pp. 489–491, pp. 259–260 *supra.*[9] Such direct proof, added to the convinc-

8. Unlike the present case, *Washington* involved allegations of racial discrimination and therefore fell within the rule of "strict scrutiny." In a strict scrutiny case the State must show that the challenged classification further a compelling state interest and is justified by the weightiest of considerations, while in a case like the present the State must show only a legitimate state interest. *See San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Nevertheless, the latter interest must still be shown. Thus the factual difference between *Washington* and the present case does not make the rule on burden of proof inapposite here.

9. Mr. Williams did mention the fewer-than-ten employees exception of section 7364(c)(1), saying that "unless they [the sixteen stores listed on the police report] appear to have more than ten employees, I know I would not instruct the police department to do anything with them." I do not find this testimony persuasive of intent to enforce, first, because Mr. Williams did not appear to recognize that the exception applies only to section 7364 sales (fresh meat, produce and groceries) and therefore would not except eight of the stores on the police list, and second, because Mr. Williams demonstrated no intention to investigate the food stores mentioned (either on the police list or on the list of thirty violators on November 10, 1974) to ascertain their eligibility for the exception.

494

ing inferential proof, amounts, in my view, to a showing that the Township has decided to prosecute only supermarkets and to permit all other violators to continue to flout the law.

Accordingly, I should find appellants' claim of discriminatory enforcement in Ross Township to have been proved, and I should therefore reverse and remand with instructions to issue an appropriate order enjoining the Township from any further discriminatory action against appellants under the Sunday Trading Laws. Otherwise, I should affirm the order of the lower court.

HOFFMAN and CERCONE, JJ., join in this concurring and dissenting opinion.